SAMUEL WOLF, ADMR., v. CHRISTIAN KOHR.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LEBANON COUNTY.

Argued February 17, 1890—Decided March 3, 1890.

1. On the trial of an issue to determine whether a judgment was confessed to hinder, delay and defraud the plaintiff in the issue, acts and declarations of the judgment defendant, done and made in the absence of the judgment plaintiff, are inadmissible without evidence connecting the latter with them.
2. It is competent for the judgment plaintiff to show the real consideration of the bond on which the judgment was entered, although the testimony may tend to contradict an indorsement upon the bond stating the consideration, which bond was read over to the judgment defendant before he signed it.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 282 January Term 1889, Sup. Ct.; court below, No 96 September Term 1888, C. P.

To the number and term of the court below, an issue was framed to determine whether a judgment confessed by Jacob Kohr to Christian Kohr for $1,420, to No. 111 November Term 1883, was "without consideration; and if so, was it confessed with intent to hinder, defraud or prevent the estate of Jacob Wolf from collecting its claim and subsequent judgment from the real estate of said Jacob Kohr?" In this issue, Samuel Wolf, administrator of Jacob Wolf, deceased, was made plaintiff, and Christian Kohr, the plaintiff in said judgment, was made defendant. Formal pleadings were dispensed with.

At the trial of the issue, on September 24, 1888, the plaintiff adduced testimony to show that, at the death of Jacob Wolf, insurance upon his life to the amount of $5,500 was paid over to Jacob Kohr, and that suit was brought by the plaintiff, as Wolf's administrator, to recover this sum from Jacob Kohr; that the cause was ruled out for trial before arbitrators, but on the day before the arbitrators met, Jacob Kohr executed a number of judgment bonds, on which judgments were at once confessed, aggregating $4,700, and that one of said bonds was executed to Christian Kohr, for the sum of $1,420, upon which the judgment in controversy was entered; that on the back of the bond to Christian Kohr was an indorsement to the effect that the bond was given as collateral security to Christian Kohr, as surety for Jacob Kohr, guardian of Ida Hess, and for indorsements in the Lebanon National Bank; that the liability of Christian Kohr for Jacob, as guardian of Ida Hess, was but for $546.30, and the note upon which they appeared together was a joint note for $200, the two amounts being but $746.30, thus having an excess in the amount of the confessed judgment as evidence of fraud.

Mr. Boyer, for the plaintiff, called Jonathan Boardner, who testified as follows :

Q. Did you have a conversation with Christian Kohr in the fall of 1883, about Jocob Kohr's affairs with regard to the Wolf matter; and, if so, when was it, where was it, and will you have the kindness to tell us what it was? A. Yes. I was sick and in my bed. Christ. came there, and I said to him, "How is it now with Jake? Must he pay this money out?" Q. What money? A. This insurance money he had drawn. Q. On whom? A. On Wolf. Q. What did he say? A. He

said " Oh no, that we can fix. I will take judgment, and we will fix it that way." Q. Well what did he say? A. I then said to him " How can you take judgment?" He said such things can be fixed, if you are sharp enough. Then he said " We are sharp enough for Wolf and Boyer." Q. What further did he say? A. That is all that I know of at that time. He had no reason why this was to be done, other than the statement. He said they would fix it in this way so that Boyer and Wolf could not get at it. . . . . Q. Now, Mr. Boardner, this was in the fall of 1883. Did you have a conversation with him afterwards, and if so when was it and where was it? A. On the fifteenth of May, 1884, I came to the house of Christ. Kohr; and, whether it was the same week or the week after, we had this conversation, I don't rightly know. Then the train went up, and I said " There goes Boyer." . . . . Q. What else was said at that time and place? A. I then said to Christ., " How is it with Jake and Wolf?" Q. What did he say? A. He said he held judgments of $2,900: I said to him, " If you would want to, you would not have to give this money back to Jake." Q. What did he say? A. He said " Oh it is a brother." We then spoke about the others; about Bill Kohr and about Alf. H. Young and about Bill Miller's wife; how much it was I don't know. Q. What was said of the judgments which they held against Jake Kohr? A. Well he said they had judgments too. I said " Why I supposed they owed Jake." He said " Well, they have judgments now." Q. Was anything said at that time about Jake not being able to own anything? A. Didn't I say that before? Q. No you didn't say anything about that. A. I then said to him, " Then Jake can't own anything." He said, " No, but he gets the worth of it anyhow." Q. Did Christ. say anything as to what those judgments were given to him and the others for? A. No, he didn't say for what the judgments were given. Q. Was anything said by Christ. Kohr, at that time, that this was being done for the purpose of keeping the Wolfs out? A. No. Q. Was anything at that time said about being too sharp for Wolf and myself? A. I think not, I don't know. . . . . Q. During either of these conversations was anything said about Christ. owing him $1,000? A. Yes, he told me that he owed Jake $1,000. Q. How did you get at it? A. He told me

so. We got at it because we were talking about the land. He spoke about the piece he had up at Indian Town Gap, and then he got at it and said how much he had learned. He said he believed he could stay in as long as he lived anyhow. Q. During any of these conversations, was anything said about his owing Jake $1,000, and how he could take a judgment from Jake when he owed him money? A. At this conversation we spoke about, I said to him, "How is it that you can take a judgment from Jake, when you yourself owe him $1,000?" And he said "If one is sharp enough he can fix it." . . . .

The plaintiff afterward called Valentine Failor, and made the following offer:

Mr. Boyer: We propose to prove that in the fall or winter of 1883 the witness was a debtor of Jacob Kohr to the extent of $300, for money which he borrowed from Jacob Kohr, and that security for this was afterwards transferred by an arrangement between him or Jacob Kohr and Christian Kohr to Christian Kohr; and we further expect to be able to prove by this witness, that he was urged to take a collusive judgment from him for 8 or 900 dollars, at or about the time this judgment against Kohr of $1,400 was entered; for the purpose of showing, in the first place, that Jacob Kohr was not financially hampered at the time of the entry of those judgments, and for the purpose of showing fraud, so far as the second portion of the offer is concerned.

Mr. Funck: Objected to, as incompetent and irrelevant.

By the court: This offer as we understand it, is to prove declarations of Jacob Kohr in the absence of Christian Kohr, and without any effort to connect Christian Kohr in any way with them. We think, until some positive evidence is given to connect Christian Kohr and Jacob Kohr, the declarations of Jacob in the absence of Christian would not be competent to affect the matter. Further, regarding the offer as a whole, the first portion of it does not seem to be relevant in any case, and therefore the offer is rejected for the present; exception.[1]

Having offered in evidence the other judgments, confessed by Jacob Kohr on the same day with the one in controversy, the plaintiff made the following offer:

Mr. Boyer: We next offer in evidence the judgment, Christian Kohr v. Jacob Kohr, No. 117 November Term 1883, entered

November 8, 1883 ; for the purpose of showing that Jacob Kohr, the defendant in the judgment in controversy, on the day before the possible entry of the award of arbitrators against him, combined with the defendant in this action and the plaintiff in the judgment offered in evidence, and entered judgments against him sufficient to sweep his estate, real and personal ; and to establish, in connection with the amount of the judgment of the plaintiff in this case against Jacob Kohr, the fact that the property of Jacob Kohr would have been hopelessly swept away by the judgments resulting from this combination, thereby cutting out the plaintiff in this case from recovering against the estate of Jacob Kohr ; also, to show what proportion the judgments confessed by Jacob Kohr, on the day before the time fixed for the first meeting of arbitrators in this case, bore towards the real estate.

Mr. Weidman : Objected to as irrelevant and incompetent.

By the court : This offer does not go far enough and for that reason is excluded ; exception.[2]

In his case in chief, the defendant denied any intention to defraud, and alleged that Jacob Kohr, the defendant in the controverted judgment, was guardian for two Hess minor children, instead of one, and had made use of their money, which the defendant as his surety would be obliged to make good ; also, that Jacob Kohr had received all the money for the $200 note, and the defendant, as his surety, was liable therefor. To establish these facts, the following offers were made :

Mr. Weidman : We also offer in evidence the bond entered into in pursuance of that appointment as guardian, by Jacob Kohr, with Christian Kohr as surety, in the sum of $2,000. Also the auditor's report making a distribution of the estate of Solomon Hess, deceased, showing an award to Jacob Kohr, as guardian of Ida and Wilson Hess, of $546.80 ; to be followed by testimony showing that the money was paid to Jacob Kohr, as guardian ; that the bond in suit was given to secure Christian Kohr as bail for those two children, and that the omission of the name of one of them in the indorsement was by mistake.

Mr. Boyer : Objected to, as to anything outside of the purpose of showing the amount which was bequeathed and paid to the guardian of Ida Hess ; for the reason that the offer of testimony for the purpose of showing the decree of payment to

Statement of Facts.

Ida and Wilson Hess, is an attempt to contradict the record of this judgment by parol, which Christian Kohr, the plaintiff in the judgment in controversy cannot do; for the further reason, that they have set out the nature and extent of the consideration in the judgment as being security for Jacob Kohr, as guardian of Ida Hess, and as bail on the note in the Lebanon Bank with renewals, and that the judgment was so given by Jacob and accepted and entered by Christian Kohr, and is now being contested under the form of this issue and plea, and Christian Kohr, as the party plaintiff therein, cannot show that the judgment was for any purposes other than those specified therein; further, that he cannot allege mistake, as the bond is with interest long overdue, and has been contested upwards of a year; also, that the only person, who could raise the question that the judgment was erroneous, is the defendant, who can do so on motion to open.

By the court: The testimony is competent and is admitted; exception.[3]

Jacob Kohr called by defendant.

Mr. Weidman: We propose to prove by this witness the consideration of this judgment. Mr. Boyer: Objected to, for the reasons I gave before.

By the court: The offer is competent.

(Witness shown the paper.) Q. That is your signature? A. Yes sir. Q. This is a judgment of $1,420 given to Christian Kohr. State what that was given for. A. Yes sir. Q. State it. A. The court put me in as a guardian of orphan children. Then I didn't think of anything else, but that his creditors wanted to have security for the money. Then I went and give them a judgment to secure and satisfy my creditors. Q. What did you give this judgment for? A. It was for the money of Hess's children in the bank.

Mr. Boyer: We object to this witness testifying to anything to contradict the record, and ask that the testimony so far as not contained in the record of the judgment itself in the appearance docket be stricken out.

By the court: The objection of the plaintiff is founded upon the assertion that what is contained in the appearance docket cannot be contradicted. It appears from an inspection that the original judgment bond is not as stated on the docket;

Charge of Court below.

there is a memorandum indorsed on the back, which was not
made by the defendant, and to which he is not shown to have
assented.  Jacob Kohr, the witness upon the stand, may there-
fore testify for what this judgment was given, even though his
testimony may, in the judgment of the present plaintiff, con-
tradict the unsigned memorandum upon back of the judgment
bond, and the memorandum in the appearance docket; excep-
tion.[4]

At the close of the testimony, the court, McPHERSON, J.,
charged the jury, in part as follows:

Briefly stated, the testimony of the plaintiff is to this effect:
Jacob Kohr, finding that the estate of Wolf was about to bring
suit against him upon a certain claim, and fearing recovery,
he was anxious that his estate should not go to the payment
of this claim; and, therefore, with the intention of hindering,
defrauding and delaying the estate of Jacob Wolf, he confessed
judgment, among others to Christian Kohr, in order to keep
the estate of Jacob Wolf from realizing its claim out of Jacob
Kohr's property; that in pursuance of this design he confessed
this judgment to Christian Kohr.  In support of that allega-
tion you were shown that a good many other judgments were
confessed at about the same time, just before the arbitrators
were to meet.  You have also the evidence of Boardner, who
testifies to a declaration with regard to the purpose for which
this judgment was confessed, and from this and other testi-
mony the jury might infer that the judgments were confessed
for fraudulent purposes.  It has also been urged that the in-
debtedness, even at the best, existing between Jacob and Chris-
tian, was only for one of the Hess children, Ida Hess, and about
$200 in the Lebanon Bank, making seven or eight hundred
dollars in all.  That has been urged as at least another fact
tending to show that this judgment was fraudulent.  That is
the plaintiff's case, as I understand it, or substantially so, and
if I have omitted any facts I have not done so consciously.

On the other side, although Christian and Jacob Kohr deny
any intention to defraud any one, they state that the considera-
tion of this judgment was to secure an indebtedness of Jacob
Kohr, who was the guardian of two children whose money he
had spent, and that the rest of the amount was made up of

Charge of Court below.

some money which Christian was responsible for in the Lebanon National Bank. It appears that Jacob was the guardian of these children. It also appears beyond question that Christian was his bail in the sum of $2,000. You have also heard that Jacob was responsible for, and had spent this money which he received for the two children, and, as Christian is his only surety, Christian will be called upon to refund that money. Now, if this testimony is believed by the jury, there is the sum of $1,100 accounted for, in this judgment, which it would be entirely proper that Jacob should secure. With regard to the amount of the notes in the Lebanon Bank, it is not denied that there was a note, and Jacob Kohr testifies that while he got the money, Christian was security and paid all of it. If that testimony is believed, that Jacob got the money and Christian was only the surety, of course that would be another sum which it would be entirely honest and right that Jacob should secure Christian, as it was a debt which he owed to Christian and which he was bound to discharge. That would make very nearly the amount of this bond, and, with the interest, no doubt the whole sum would be accounted for. Mr. Weidman's testimony, you will remember, is to the calculations by which they arrived at the amount of the judgment.

Now if you believe that testimony, there is a defence made out. No fraud could be found from such facts, if the jury believed them to be true. Jacob could satisfy his creditor only to the amount of his indebtedness, and no farther. That is what a debtor has a right to do to any creditor. He has a right to prefer one over another, of course with the limitation that it must be for an honest debt, and must not be for more than the amount of the real indebtedness.

As to the testimony of Mr. Boardner, there is one point which it may be possible that he, while testifying of course with entire frankness and a desire to be truthful, may have misunderstood, as it is easy to misunderstand a conversation, and a little misunderstanding would probably give the conversation such a leaning as he has testified to. I suppose the jury can readily see from all the testimony that Jacob Kohr did not want to have this claim of Wolf's collected from his estate; that he did confess these judgments at the time this claim was pushed, for the purpose of preventing Wolf's estate from collecting

Charge of Court below.

their claim.   But he had a right to prefer this claim, if he really owed the money.   Now, as to this statement, that the claim of Wolf's would not be collected because he would confess judgment, if it were a declaration of intention to confess judgment for honest debts, that he had a perfect right to do.   I am only suggesting this to you as a possible conclusion.   On the other hand, the jury must determine of course how it was.

Upon the whole question as to whether or not this judgment was a collusive or fraudulent one, as between those two parties; whether it was confessed for a larger sum than was due; whether it was confessed without consideration in that sum, with intent to hinder, defraud or delay the estate of Jacob Wolf from collecting its claim, if that was the case in whole or in part, the judgment is not good as against Wolf, and your verdict would have to be for the plaintiff.   On the other hand, if you find that the defendant has satisfactorily explained the judgment, and that it was for no more than was actually due, then your verdict must be for the defendant.   If you find that the judgment was fraudulent you find in favor of the plaintiff. If you find that it was not fraudulent, then you find in favor of the defendant.

Counsel for plaintiff requests the court to charge as follows:

1. The records of the judgments, in connection with the testimony as to the amount of the liability of Christian Kohr, as bail for Jacob Kohr as guardian of Ida Hess, and his indorsement in the Lebanon National Bank, and Christian Kohr's admission that he knew that the Wolf claim was sued at the time, cast upon the transaction the imputation of fraud and that it was entered into to delay, hinder and defraud the plaintiff in this issue, and the judgment is void for the entire amount thereof as to creditors.

Answer: Refused.   The question is for the jury.[5]

2. The taking of this judgment for almost twice the amount of the actual consideration for which it was given, with the knowledge of the indebtedness of Jacob Kohr to Wolf, was a fraudulent conveyance within the statute of Elizabeth, and the judgment is void for the entire amount as to creditors.

Answer: Refused.   The question is for the jury.[6]

The jury returned a verdict for the defendant.   Judgment

Opinion of the Court.

having been entered, the plaintiff took this appeal assigning for error:

1, 2. The refusal of plaintiff's offers.[1] [2]

3, 4. The admission of defendant's offers.[3] [4]

5, 6. The answers to plaintiff's points.[5] [6]

*Mr. Bassler Boyer*, for the appellant.

Counsel cited: Bredin v. Bredin, 3 Pa. 88; Kaine v. Weigley, 22 Pa. 179; Laubach v. Laubach, 73 Pa. 387; Christian v. Dripps, 28 Pa. 271; County v. Leidy, 10 Pa. 45; Graham v. Smith, 25 Pa. 325; Miller v. Fichthorn, 31 Pa. 256.

*Mr. Josiah Funck* and *Mr. Grant Weidman*, for the appellee, were not heard.

PER CURIAM:

The question whether the judgment confessed by Jacob Kohr to Christian Kohr was given to hinder and delay the creditors of the former, was fairly submitted to the jury and they have found in favor of the integrity of the judgment. It was urged, however, on the part of the plaintiff, that certain evidence was excluded which ought to have gone to the jury, and which might have led them to a different conclusion. This forms the subject of the first and second assignments of error. The evidence referred to, however, was clearly inadmissible. It was in no way connected with the defendant. The declarations of Jacob Kohr, in his absence, were not competent. Nor do we see any error in the admission of the evidence referred to in the third and fourth assignments. It was offered and received for the purpose of showing the consideration of the judgment. The fifth and sixth assignments allege error in the answer to the plaintiff's points, and are not sustained. They were properly answered in connection with the general charge, in which the learned judge said: " Upon the whole question as to whether or not this judgment was a collusive or fraudulent one, as between these two parties; whether it was confessed for a larger sum than was due; whether it was confessed without consideration in that sum, with intent to hinder, defraud or delay the estate of Jacob Wolf from collecting its claim, if that was the case in whole or in part, the judgment is not good against

Wolf, and your verdict would have to be for the plaintiff."
The learned judge committed no error in submitting the facts
involved in these points to the jury.

Judgment affirmed.