KARL KLINE v. A. Æ. McCANDLESS ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 4, 1890—Decided January 5, 1891.

(a) Property was sold at sheriff's sale and purchased by the execution plaintiff, the father of the execution defendant. Two days thereafter, it was levied upon and again sold at sheriff's sale at the suit of another creditor, and a second time purchased by the father:

Statement of Facts.

1. In an action by the father against the sheriff and the second execution creditor, to recover damages for the unlawful sale, a sufficiently proper measure of damages was the amount of money the father was obliged to pay for the property at the second sheriff's sale.
2. Under the evidence submitted, the question of the validity of the judgment of the father against the son, upon which the first sale was had, was properly submitted to the jury; moreover, the evidence was clearly insufficient to sustain a verdict against the validity of the judgment.
3. The validity of the judgment could not be affected by declarations of the defendant not made in the presence of the plaintiff; nor, was the plaintiff estopped by his acts and declarations of an equivocal character, when nothing was done or suffered by the defendant on account of them.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 166 October Term 1890, Sup. Ct.; court below, No. 248 September Term 1889, C. P. No. 1.

To the first Monday of August, 1889, Karl Kline brought trespass against Alex. Æ. McCandless, sheriff, and Joseph Huffnagle, to recover damages for the seizure and sale of four horses, as the property of George Kline, at the suit of said Huffnagle, the plaintiff claiming the horses as his property. Issue.

At the trial on April 3, 1890, it was made to appear, in substance, that in 1886 Karl Kline, the plaintiff, turned his sand business over to his son George Kline and sold him his horses, wagons, etc., for $1,500, $100 of which was paid in cash, and the balance by a judgment note for $1,400. George Kline became dissipated, and, in 1888, his father had judgment entered on the note and an execution issued, upon which certain property, including the horses in dispute, was sold to George Keil. After that sale, George Keil turned the horses over to George Kline who continued in business as before. It did not appear that Karl Kline had anything to do with the arrangement between Keil and George Kline. Later, in 1888, Keil obtained judgment against George Kline, issued execution and caused a levy to be made thereon. Karl Kline paid the amount of Keil's claim, and George Kline executed to the former a bill of sale of the property, but remained in possession of it as before. On June 1, 1889, Karl Kline issued another execution upon his judgment and, on June 3d, the sheriff levied upon

the property, including the four horses, and, on June 10th, sold the same to a man named Fox, who was in the employ of Karl Kline and bought the property for him.   On June 8, 1889, a judgment was entered in favor of Shœnberger, for use of Joseph Huffnagle, against George Kline, and on June 12th* an execution therefrom was levied upon the horses, and at the sheriff's sale thereon, on June 20th, Fox again bought them in for the plaintiff for $521.

Joseph Huffnagle testified for the defendants that when he was requested by George Kline to become surety for the latter to Shœnberger for the indebtedness represented by the judgment upon which the last sheriff's sale was had, George Kline showed him a statement of account from his father and said that that account, which did not include the $1,400 note, represented his entire indebtedness to his father.   There was evidence tending to show, also, that about the same time, Karl Kline stated to the tax assessor, in the presence of Huffnagle, when required to make a return of his taxable property, that there was nothing due to him upon the judgment against his son.   The father and son testified in explanation or denial of these declarations.

At the close of the testimony, the court, SLAGLE, P. J., charged the jury in part as follows :

This is an action brought by Karl Kline to recover damages for the seizure and sale of four horses.   I do not know whether there was any other property or not, but the value of the property is fixed, as far as this case is concerned, by the price paid at the sheriff's sale.   Ordinarily, that has nothing to do with the damages.   The party who owns it is entitled to recover the full value of the property without regard to the price at which it was sold by the sheriff.   But, in this case, it was bought in by the agent of the plaintiff, and therefore he did not lose his property ; he got it all back ; but he lost $521, the amount for which it was sold at the sheriff's sale, and which he was compelled to pay the sheriff in order to get it back. So that, as far as this property is concerned, that is the measure

* The date, " the next day," stated in the charge to the jury, was admitted to be an error.

Charge of Court below.

of damages, if the property was worth that much money. He says it was, and I presume there is very little doubt that it was. . . . .

Karl Kline had a judgment which was obtained in the regular way by confession of an attorney, I believe it was entered in 1888, upon which an execution had been issued and the property sold to Mr. Keil; most of this property, all except one horse, I believe; but really that has nothing to do with the matter except as showing the transactions as to which the defendants comment unfavorably. After that sale it came back to George Kline from George Keil. He bought it at the sheriff's sale; it belonged to him; he had a right to do with it as he pleased, and he gave it to George Kline upon such terms as were satisfactory between them. It so continued until 1889. There were one or two transactions intermediate which I do not think have any special bearing on it.

On May 31, 1889, the judgment of Karl Kline already sued upon was unsatisfied, except as to the amount which had been made by the sheriff upon the first sale in 1888. Upon that judgment he had a right to issue an execution and levy upon the property of George Kline, and he did so levy, and levied upon this property as the property of George Kline. Upon the next day the defendant, Huffnagle, issued an execution upon his judgment, and levied upon the same property as the property of George Kline, and I have some question in my mind as to whether the defendant is in a position, in view of those circumstances, to question the validity of the judgment of Karl Kline in this proceeding. But, in order that the question may be disposed of, I will say to you that he is, and will proceed to the consideration of the question as if there was no doubt upon that point.

[Upon the execution issued upon Karl Kline's judgment a sale was had. Now that judgment, as I say, was standing upon the records as unsatisfied, the execution was regular in form, and the sale, so far as shown in the evidence, was regular in form. After due advertisement, the sale was made by the sheriff, and the property bought in by the agent of Mr. Karl Kline for him; and I say to you that that conveyed the absolute, unqualified title to Karl Kline, and that the property passed by that sale to him and belonged to him thereafter, so far as the record shows.] [1]

Charge of Court below.

[After that sale was had, the defendant in this case ordered the sheriff to proceed on his writ and sell the property again, and it was sold again, and again it was bought in. In that he was a trespasser, and is liable in damages to Karl Kline, unless Karl Kline's judgment was fraudulent and absolutely void. When you come to that part of the case, the burden of proof shifts upon the defendants. (The plaintiff has made out a perfect title to the property, and he has shown a trespass by the levy and sale upon it, which makes out his case.) [3] Then it rests upon the defendants to show to you that that judgment upon which the plaintiff claimed title was a fraudulent one; and it is not a mere suspicion that will justify you in finding it is fraudulent; judgments are too sacred for that. You must be satisfied, not beyond a reasonable doubt, but the testimony must be clear, satisfactory and convincing, and you must be clearly satisfied before you can find a verdict for the defendants, that the judgment upon which the property was sold to Karl Kline, that is, the plaintiff's judgment, was fraudulent and void.] [2] Now, was it? Is there evidence to satisfy you of that? If not, your verdict should be for the plaintiff for the amount of damages which he is entitled to receive. . . . . .

But there is some other evidence, and the evidence that is more directly in point in this case than anything else that was offered, is the testimony in relation to the payment of this debt. Karl Kline says there was nothing ever paid upon this note except what was made at the sheriff's sale, and George says the same. There is evidence, on the contrary, tending to show that this judgment had been paid and that it was kept alive for fraudulent purposes, and that, therefore, the sale was fraudulent and void. I say to you, for the purposes of this case, that if this note had been paid by George and was kept alive merely to use it for the purpose of transferring property, it would be a fraud, and the sale would be void.

[Mr. Huffnagle says that a certain paper was presented to him by George on October 1, 1887, (and you will observe that was before the first execution was had,) which upon its face appears to be a sand bill, and shows a balance due of $396, and he says George showed him that paper and said that was all he owed. I do not remember whether Mr. Huffnagle said there was any special allusion made to the note or not, but he said that

Charge of Court below.

was all he owed his father.  Suppose he did ; that would not
conclude Karl Kline, unless he knew of it ; it would be no evi-
dence against him unless he knew it.  It would affect the tes-
timony of George, here, as to the fact that it was not paid, and
that is all.  But, even suppose Mr. Huffnagle had said that,
or has stated exactly what was said, would it be reasonable for
you to conclude that this judgment, which was left unsatisfied,
was paid because George, under those circumstances, said it
was ?  He had reasons, possibly, at that time for making that
statement that were not entirely proper.] [4]

[As to Karl Kline, the testimony of Mr. Huffnagle is, that on
a certain occasion, when he went to fix his taxes—I believe it
was in 1887, and that was the first year that this tax upon per-
sonal property was assessed—when he came to make his return,
he said there was nothing due him on this note.  He says that
he said that to Mr. Credge, and that he made his statement
under oath.  Mr. Kline says that what he said was, that he
had nothing to pay on it, because he had debts ; that he owed
debts more than what was coming to him, and that he thought
he was not bound to pay taxes upon moneys that were due him
when he was owing to other people.  Now, you have a right to
take all this explanation and the statements made as testified
to by Mr. Huffnagle, which are denied by both the Klines.] [5]
George denies he made any such statement to him, as Mr.
Huffnagle testifies to, and Karl Kline denies that there was
any statement made about this note being paid.  His state-
ment is different from that of Huffnagle, but you take the
testimony of Mr. Huffnagle and consider it in connection with
the explanations and denials made by the Klines.  Does it
satisfy you that this judgment was paid ?  Are you satisfied
clearly that it was paid ?  If you are, you should find a verdict
for the defendants.  If you are not, find a verdict for the
plaintiff.

[Now, as to the damages.  The damages, as I have stated,
would be the amount that he was compelled to pay to get this
property at sheriff's sale, which was $521.] [7] . . . . .

The defendants request the court to charge :

1. If the jury find from the evidence that the plaintiff led
the defendant to believe that the note held by plaintiff against
his son, George Kline, was paid and satisfied, and, relying

Opinion of the Court.

upon such statement, the defendant, Huffnagle, became the creditor of George Kline, the plaintiff would be estopped from setting up the said note as an existing indebtedness as against the said claim of Huffnagle.

Answer: Refused.[8]

—The jury returned a verdict for the plaintiff for $600. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, assigning for error:

1–7. The portions of the charge embraced in [ ] [1 to 7]

8. The answer to the defendants' point.[8]

*Mr. F. C. McGirr* (with him *Mr. W. D. Moore* and *Mr. H. T. Watson*), for the appellants.

Counsel cited: Serfoss v. Fisher, 10 Pa. 184; Ashmead v. Hean, 13 Pa. 584; Lowe v. Dalrymple, 117 Pa. 564, 568; Gibbs v. Neely, 7 W. 305; Confer v. McNeal, 74 Pa. 112; McFadden v. Reynolds, 20 W. N. 312; Reams v. Pancoast, 111 Pa. 42; Schott v. Chancellor, 20 Pa. 195; Dick v. Cooper, 24 Pa. 217; McMichael v. McDermott, 17 Pa. 353.

*Mr. James Bredin*, for the appellee.

Counsel cited: Covanhovan v. Hart, 21 Pa. 495; Brown's App., 86 Pa. 524.

PER CURIAM:

There was not sufficient evidence upon the trial below to impeach the judgment which Karl Kline, the plaintiff, held against his son George, nor the execution issued upon said judgment, under which the personal property of the latter was sold. This sale placed a good title in Karl Kline. When, therefore, the same property was again sold as the property of George Kline, upon an execution issued by defendant Huffnagle, the latter became a trespasser. All this is plain enough.

The defendants contend, however, that the judgment Karl Kline held against his son had been fully paid, and offered some evidence to that effect, consisting of the declarations of the Klines, father and son. This testimony was by no means strong, but was properly submitted to the jury. It was clearly insufficient to justify a verdict against the validity of the judgment, contradicted as it was by the Klines. The defendant

Syllabus.

Huffnagle further contended that the plaintiff was estopped from setting up the judgment as an existing indebtedness, as against his, Huffnagle's, claim, for the reason that the plaintiff had led him to believe that the note held by the plaintiff against his son George was paid and satisfied. The court below refused to affirm defendants' point in which the question of estoppel was raised. See eighth assignment. We find no error in this. The evidence did not warrant the point. The declarations of George Kline made in the absence of his father could not affect the latter, while the declarations of Karl Kline, upon which much stress was laid, were not made to Huffnagle, but to the assessor in his presence, and were, besides, of an equivocal character. Acts or declarations to bind as an estoppel must have been acted upon. Something must have been done on the faith of them, before they can be invoked as an estoppel. This record is barren of any evidence to show that Huffnagle became a creditor by reason of any act or declaration of Karl Kline.

Nor do we see error in the ruling of the court below upon the question of damages. The jury were told that the measure of damages was the amount the plaintiff was obliged to pay at the sheriff's sale to get his property back. Whether it was worth more or less, the plaintiff was obliged to pay $521 to get it, and we think he was entitled to recover that amount. There are many other matters in the case, but what has been said covers all that it is necessary to refer to.

Judgment affirmed.

