## Silas Hartley, Appellant, *v.* G. W. Weideman.

*Evidence—Witness—Declarations.*

The declarations of a competent witness who is present in court are inadmissible when not part of the res gestæ.

The declarations of a party must be proved by one who heard them. It will not do to show by A that B told him that he heard C make a certain statement, if it is C who is to be affected by the testimony.

*Evidence—Partnership books—Promissory note.*

On an issue to determine the validity of a judgment entered upon a judgment note for $1,500, where the maker of the note testifies that he gave it for a debt of a firm to which he belonged, it is proper for the purpose of contradicting the witness, and as bearing upon his credibility and the bona fides of the indebtedness, to admit in evidence the partnership books, in support of an offer to show that the debt due by the partnership to the payee of the note was only $30.00.

Argued March 15, 1896. Appeal, No. 217, Jan. T., 1887, by plaintiff, from judgment C. P. Susquehanna Co., Aug. T., 1887,

No. 246, on verdict for defendant. Before Sterrett, C. J., Green, Williams, Mitchell and Fell, JJ. Reversed.

Sheriff's interpleader. Before Archbald, P. J., of the 45th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

At the trial the plaintiff offered the partnership book of Powell & Ridgeway, and the declarations of Weideman in evidence to show that the firm did not owe him to exceed $27.00, and the deposition of F. B. Powell, in connection with this witness, as far as making proof of the book is concerned; to be followed with the deposition of F. B. Powell, as to their authenticity, and further by the declarations of G. W. Weideman, himself, made before the giving of this note and subsequent to the fall of 1882, when the firm was dissolved, to the effect that Powell and Ridgeway only owed him $27.00 and some cents, and further that Weideman was present on the former trial of this case in the courtroom, and was not called as a witness in his own behalf at all to substantiate his claim to the amount in this case.

Objected to as incompetent and immaterial.

The Court: This book does not purport to contain an account of Mr. Weideman with the firm. It is possible if it did that it might be different. It simply gives him credit for a certain thing and charges him with cash, which is not the subject of book entry. It is really a mere account of the firm with itself as to its stock purchases.

Mr. Jessup, for plaintiff: This is offered for the purpose of contradicting Ridgeway, in connection with the testimony on the stand; to contradict Uriah Ridgeway as to the number of cattle delivered there.

Mr. Davies, for defendant: We object, that it is immaterial and incompetent, and that it does not show how many cattle were delivered there, and that it is a summary of the account kept by the firm with themselves, and that cash items are not the subject of book entry.

The Court: I do not rule on anything more than the book. I don't think it is admissible to prove that Weideman was present at the former trial.

Mr. Jessup: We will withdraw that part of the offer. The deposition included in the foregoing offer was filed May 18, 1893, and it is the deposition of F. B. Powell, taken on a rule to show cause why a new trial should not be granted in this case, and it was proved yesterday that the witness is dead since his deposition was taken. We will now offer this deposition in evidence.

Mr. Davies: We object to the deposition as incompetent; that being taken on a rule for a new trial, the subject-matter contained therein is incompetent.

Mr. Smith, for plaintiff: We don't offer this deposition as independent testimony, but merely for the purpose of identifying the book, for the purpose of offering the book in evidence.

The Court: I don't think they are admissible in any view. Objection sustained. Plaintiff excepts. Bill sealed for plaintiff. [1]

Uriah Ridgeway was asked by defendant's counsel:

Q. How did you come to leave? Objected to.

The Court: My impression is that this may possibly explain the question of the possession of the personal property at the time of the levy by the sheriff, and therefore I will admit it.

To this ruling plaintiff excepts. Bill sealed for plaintiff.

Mr. Davies: How did you come to leave? A. I was ordered away. Q. By whom? A. By E. H. Ridgeway. Q. State what was said? A. Well, if you will let me state the circumstances, I will do it in brief. Q. Just what he said? A. He said at the breakfast table that I and Anna must look for a new boarding place; that we couldn't eat any longer at his table, that that was his grub. Q. Who was Anna he spoke of? A. My wife. Q. What date was that? A. That was somewhere from the 1st to the 10th of July, I think somewhere along there, I couldn't say the date. Q. Did you move from there by reason of his directions? A. I moved from there by being ordered away. Q. Have you ever been back since? A. No, sir. Q. Has Elmer in any way furnished you a home since that time or not? A. No, sir. [2]

Mr. Davies: The understanding and arrangement was that Elmer should furnish him a home as long as he lived.

The Court: I see that this evidence admitted does not go at all to establish what I thought it might, and I therefore will entertain a motion to strike it out.

Mr. Jessup: They have already got it before the jury, and I don't think we can take the effect of it from the jury.

Mr. Davies: I object to its being stricken out.

. The Court: The court will of its own motion direct that the evidence in regard to why Mr. Ridgeway went away be stricken out, and the jury are directed to disregard it, as though it had not been testified to.

Plaintiff's counsel asked this witness on cross-examination:

Q. Didn't you tell Holloway Robinson that you had given your son his time, in substance that?

. Objected to.

The Court: Objection sustained. I don't see how that is material. Exception to plaintiff. [3]

Mr. Davies: We offer to show by Ulysses Ridgeway, the witness on the stand, that sometime about the time of the 1884 sheriff's sale the witness asked Uriah Ridgeway what this sheriff's sale of this property meant, and whether the property was to be taken away, and Mr. Ridgeway replied that it was done by Mr. Hartley to assist him to hold off his creditors; that the property would remain just the same as before the sale.

Mr. Jessup: We object to it, as irrelevant and incompetent, and that the conversation was not in the presence of Silas Hartley, and was not communicated to him nor assented to by him, and that he cannot be affected by the ex parte declarations of Uriah Ridgeway not in his presence and not communicated to him.

The Court: If there was an agreement of fraud, as testified to by Mr. Ridgeway, I think perhaps it would be evidence. Objection overruled. Plaintiff excepts. Bill sealed for plaintiff. [5]

Mr. Davies: Q. State whether you had a conversation with your father at or about the time of the sheriff's sale of Silas Hartley against your father in 1884 in relation to the sheriff's sale? A. Yes, sir. Q. What did you say to your father and what did he say to you? A. Why, I asked my father why it was that Mr. Hartley didn't take the property away that he sold, and he said it was only done to help him; that the property would remain there just the same as it always had.

Mr. Jessup: We ask to have that stricken out, on the ground that it was after the sale, and that that is not the offer.

Mr. Davies: Q. Do you recollect about the time in relation to that sheriff's sale of 1884? A. I don't remember as to the time. I know there was so many sales I used to speak to my father about it at different times. Q. Do you remember the last sheriff's sale in 1884? A. No—I remember there being a sale about that time. Q. Did you inquire of your father about this about that time? A. I think it was about that time, to the best of my recollection.

The Court: Q. The conversation you had with your father was just about the time of the sheriff's sale in 1884? A. Yes, sir. Q. The sheriff's sale of the personal property in 1884? A. Yes, sir.

Mr. Jessup: Q. We want to know whether it was before or after? A. I would speak to him about it every time there was a sale there, why the property didn't go away. There never was a sale happened there that I didn't talk with him about it.

The Court: Q. Was the inquiry in 1884 before or after the sale? A. I think it was after the sale. Q. How long after? A. I couldn't say. Q. About how long after the sale? A. O perhaps a day or two.

Mr. Jessup: We move to strike out the witness's testimony on that subject.

Motion refused. Plaintiff excepts. Bill sealed for plaintiff. [5]

Charles Ridgeway, sworn on behalf of the defendant, was asked:

Q. Do you recollect about the time of the sheriff's sale of your father's property in 1884 by Mr. Hartley? A. Something right away afterwards. Q. State if you had any conversation with your father immediately afterward in relation to the sale? A. Why, I think I was there, and I had heard of this sale, and I asked him what it meant—

Objected to.

The Court: How soon was it after the sale? A. Well, not a month afterward, anyway.

Mr. Davies: Q. Give your best recollection as to the time; how soon afterward; state the time, if you can? A. Well, I don't recollect the date. Q. About how soon after the sheriff's sale were you there and had this talk? A. Sometime within a month. Q. What did your father say?

Objected to.   Objection overruled.   Plaintiff excepts.   Bill sealed for plaintiff. [5]

Q. What did your father say when you inquired of him about the manner of that sale?   A. He said that Mr. Hartley had sold the things to recover his indebtedness that he owed, and he was going right on just the same as he had before, and that is all there was said that I can remember; because it was nothing to me.

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–3, 5) rulings on evidence, quoting the bill of exceptions.

*A. H. Mc Collum,* of *Mc Collum & Smith, W. H. Jessup* with him, for appellant, cited: Rahlfing v. Heidrick, 4 Phila. 3; Heine v. Com., 91 Pa. 148.

*T. J. Davies, J. M. Kelly* with him, for appellee, cited: Summers v. M'Kim, 12 S. & R. 405; 1 Greenleaf on Evidence, p. 177; Morse v. Potter, 4 Gray, 292.

OPINION BY Mr. JUSTICE WILLIAMS, May 4, 1896:

The issue in this case was framed under the sheriff's interpleader act to determine the title to certain articles of personal· property levied on by the sheriff of Susquehanna county as the property of Uriah Ridgeway.   The articles were found in the. possession of Elmer H. Ridgeway, a son˜of Uriah Ridgeway, who claimed them, not under or in the right of his father, but, as the bailee of Silas Hartley, the plaintiff.   Two questions of fact were raised on the trial.   The first related to the bona fides of Hartley's title.   The other to the bona fides of Weideman's judgment.   The ground of actual controversy over either question was narrow.   The title set up by Hartley was based as to some of the articles claimed by him on a sheriff's sale made in 1884 at which he became the purchaser.   As to the· other articles it rested on a sale made by Uriah Ridgeway to him as part of a tripartite arrangement between him and the two Ridgeways, the history and character of which were shown by the evidence to be substantially as follows.   After the sheriff's sale in 1884, Hartley did not remove the personal property

bought by him but suffered it to remain in the possession of and to be used by Uriah Ridgeway. In 1886, Ridgeway's interest in the real estate occupied by him was brought to sale by the sheriff and Hartley became the purchaser of this also. He also bought at private sale other outstanding interests in the same land and became the owner thereby of the farm in fee simple. He did not disturb Ridgeway's possession of the farm and seems to have been trying to get some definite agreement with him fixing the total sum invested in the property real and personal and in loans to him. To this end near the close of 1886 he issued a writ or writs of fieri facias against Ridgeway and caused a levy to be made upon the personal property now in controversy or a considerable part of it, embracing stock, grain, farming implements and household goods upon the premises. This resulted in several meetings between the parties and an effort to adjust the amount of Hartley's loans and investments. Uriah Ridgeway then alleged that his son, Elmer, who was yet a minor, was the owner of the crops and farming implements; that he had given his son his time and he had earned and raised the articles to which he claimed title, and that these could not be sold under the writs issued against himself for that reason. There seems to have been a disposition on the part of Hartley as well as the father to vest in the son a title to all the property real and personal if a satisfactory settlement could be made in regard to the amount of Hartley's investments; but this was not reached, nor was any satisfactory method of making the title to the son devised by them. They finally agreed to meet at the law office of Searle and McCollum in Montrose, to lay the whole subject before D. W. Searle, Esq., now Judge SEARLE, and to act under his advice. This meeting was held on the 17th day of January 1887. It resulted in an ascertainment of the amount of Hartley's investments, in a transfer of all the personal property by Uriah Ridgeway to Hartley, and in an arrangement for the conveyance of all the property real and personal by Hartley to Elmer H., the son, who paid $1,000 down and engaged to pay $3,500 more in annual instalments, as the full price of all the property and in discharge of all the claims held by Hartley against his father. Of the hand money then paid, Uriah Ridgeway furnished to his son $800 to enable him to complete the bargain, and obtain the satisfaction of the claims which

Hartley held against himself. When this was accomplished the parties returned home with apparent acquiescence in and satisfaction with what had been done. The father had secured the satisfaction of the claims of Hartley against him and the transfer of the title to all the property real and personal to his son. The son had secured time in which to pay for the property he had purchased. Hartley had secured a settlement of his demands, a payment upon them and a prospect for their ultimate payment in full. For nearly six months harmony seems to have followed. At length misunderstanding arose between father and son, and the father went out from the house he had occupied with his son on the farm and trouble began.

With the origin or extent of the trouble we have here nothing to do. The first question was over the bona fides of the arrangement made under the supervision of Judge SEARLE on the 17th day of January, 1887. Was this an honest arrangement made to secure the property to the son upon the payment of the money due to Hartley, or was it a fraudulent device to take the property of Uriah Ridgeway and put it beyond the reach of his creditors? The plaintiff relied on the title shown by the sheriff's sale of 1884 and the private sale of January, 1887. This was certainly a good title, prima facie, as against Uriah Ridgeway and all persons claiming through or under him. The defendant realized the stress of the situation and rested his attack upon the title on an allegation that both the sheriff's sale and the contract of January, 1887, were intended to cheat and defraud the other creditors of Uriah Ridgeway of whom he claimed to be one. The witness relied on to establish this proposition was Uriah Ridgeway himself. He was a competent witness and was fully examined. The defendant then sought to corroborate the testimony of this witness and show the fraudulent intent of Hartley by proving the declarations of Ridgeway to one of his sons made some time after the sheriff's sale of 1884 as to Hartley's motives, and statements to him in regard to his becoming a purchaser at the sale. These were the declarations of a competent witness actually testifying in the cause, and then present in court. Upon what principle they were competent as the evidence in the cause then stood we are unable to understand. They were in no sense part of the res gestæ. They were not the declarations of the party

made to the witness by whom they were proved. It was in
fact an attempt to prove by one what he had heard another say
had been said by the party to be affected. This will not do:
Kline v. McCandless, 139 Pa. 223; Wolf v. Kohr, 133 Pa. 13.
It was Hartley's title that was assailed, and the question was
whether what the witness alleged he had heard Ridgeway say
in the absence of Hartley, as to what Hartley had said to him
about becoming a purchaser at the sheriff's sale, was competent
evidence to affect Hartley. It is text law that the declarations
of a party must be proved by one who heard them. It will not
do to show by A that B told him that he heard C make a certain
statement, if it is C who is to be affected by the testimony.
This evidence should have been excluded.

The defendant claimed to be a creditor of Uriah Ridgeway
with a demand arising two years before the sheriff's sale, or in
1882. The note on which his judgment was entered was given
about the time of the difficulty between Uriah Ridgeway and
his son and was antedated some months. It was in fact given
in the summer of 1887. It became necessary therefore to show
the consideration of the note and the time when the alleged in-
debtedness arose. For this purpose the defendant's testimony
and that of Ridgeway was relied on. They alleged that in
1882 Ridgeway was a member of the firm of Powell & Ridge-
way, doing business as butchers and dealers in meat; and that
the firm purchased live cattle from Weideman upon which there
was due in that year when the partnership business closed about
$1,500. No proceeding seems ever to have been taken by Weide-
man against the partnership or either of its members; but in
the summer of 1887 Weideman and Ridgeway came to Montrose,
and a note was given by Ridgeway for the sum of $1,524.75,
alleged to have been for the debt of Powell & Ridgeway. The
plaintiff denied the existence of this debt and asserted that the
actual balance due to Weideman from the firm was less than
$30.00. For the purpose of contradicting Ridgeway in regard
to this subject the plaintiff offered the partnership books of
Powell & Ridgeway in which their account of stock purchased
was kept, alleging that it would show the transactions between
the firm and the defendant; and that the account as there kept
made the balance a little over $20.00. This offer was rejected.
It should have been admitted. Ridgeway had testified that the

note was given for a debt of the firm. If the entries upon the books of the firm were inconsistent with his testimony, this was a circumstance calculated to affect his credibility, to which the plaintiff was entitled, and which if not satisfactorily explained was entitled to great weight. In an action by Weideman against Powell & Ridgeway for the recovery of this debt the firm could not have used their books as evidence of the amount of the claim against them ; but the effort here was to make use of the entries upon the firm books to contradict or at least to discredit the statements of one of the members of the firm in regard to a partnership transaction. This would not have been conclusive evidence as to the character of the transaction, but it might have been persuasive upon the subject for which it was offered, viz : the credibility of Ridgeway's testimony and the bona fides of the alleged debt. The circumstances under which the note was given, the time at which it was given, its amount, and the use which was at once made of it, were suggestive of a purpose on the part of Ridgeway to defeat the arrangement to which he had been a party some six months before, and under which his son had acquired with his active assistance the title to the farm and all the personal property upon it.

The plaintiff should have been allowed to test his credibility by the entries upon the books of Powell & Ridgeway under his offer. It is to be regretted that this protracted litigation must occupy the attention of the court still longer but the errors referred to require us to reverse the judgment. It is now reversed accordingly and a venire facias de novo is awarded.