## Amanda E. Campbell, Appellant, v. Hartford P. Brown.

*Evidence—Competency of witness—Deceased party—Equity—Answer to bill.*

On a bill in equity by a sister against a brother to set aside conveyances and transfers of property made by their father in his lifetime to the defendant, both the plaintiff and the defendant are incompetent witnesses; but the plaintiff, by calling upon the defendant to answer her bill, makes him competent for that purpose, and if the answer is responsive to the bill, the plaintiff is bound by it, unless she overcomes it by the testimony of two witnesses or of one witness and corroborating circumstances.

*Parent and child—Transfers of property—Fraud—Review.*

The Supreme Court will not reverse the court of common pleas in its dismissal of a bill in equity filed by a sister against a brother to set aside conveyances and transfers of property made by their father in his lifetime to the defendant, where the evidence shows that the father was of perfectly sound mind up to the time of his death; that he had quarreled with his daughter; that he had had nothing to do with her for a long time prior to his death; that he had always shown the greatest affection for his son and his son's family, and that he had not been influenced by any fraud, persuasion or duress in making the transfers and conveyances.

Argued Oct. 15, 1897. Appeal, No. 142, Oct. T., 1897, by plaintiff, from decree of C. P. Beaver Co., March T., 1897, No. 5, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to set aside conveyances and transfers of property.

The opinion of WILSON, P. J., before whom the case was heard, was as follows:

### FINDINGS OF FACT.

1. That Perry Brown died on November 18, 1892, leaving to survive him two children, the plaintiff, Amanda E. Campbell, and the defendant, Hartford P. Brown.

2. That the plaintiff was married in 1860 to Samuel Campbell, who is still living, and at the time of the decease of Perry Brown, their children, two sons and one daughter, aged respectively 28, 30, and 32 years, were all married.

3. That the plaintiff and her husband were living at Beaver Falls at the time of the death of the said Perry Brown, and had been living there for a number of years prior to that time, a distance of about five miles from the location in the borough of Rochester, where the said Perry Brown had been living for quite a number of years before and at the time of his death.

4. That the defendant, Hartford Perry Brown, was also married, and at the decease of the said Perry Brown had a family of small children.

5. That the wife of the said Perry Brown died on June 27, 1889, and after her death Perry Brown divided nearly all the household effects between the plaintiff and the defendant, and from that time until his decease made his home with the defendant in the borough of Rochester.

6. That in the fall of 1888, during the illness of his wife, said Perry Brown suffered some sort of an attack, from which he completely recovered, and the following year made a trip, unaided and alone, to California, where he remained during the winter, returning in April, 1890.

7. That a short time after the above-mentioned illness the

said Perry Brown had two or three similar attacks, but in much milder form, and from all of which attacks he speedily recovered, and that there was no impairment of his mind by reason of these attacks, nor was any bodily infirmity produced by them.

8. That the said Perry Brown was a man of strong mind and good business capacity, and so remained until his decease at the age of 72 years, and physically unafflicted, save by the usual infirmities of age.

9. That the said Perry Brown was a man of strong determination, uncompromising in defense of his rights or his supposed rights, controlled only by his own ideas of what was proper. He was a man of business ability, a member of the board of directors of the Rochester Heat and Light Company, and from 1887 until within a few days of his death participated in the transaction of the business of said company, attended the meetings of the board of directors, transacted business for it, waiting upon its customers in receiving the money and receipting the bills for gas, until sometime in the month of November, 1892.

10. That on September 23, 1889, the said Perry Brown made his last will and testament, in his own handwriting, duly signed and executed in the presence of witnesses, and delivered it to John Conway, to be delivered to the defendant upon the death of the testator—which will has since been duly proved and remains of record in the register's office in this county, in which he gave, devised, and bequeathed unto the defendant all his property, real, personal, and mixed, except one hundred shares of the People's Insurance Company stock, which he bequeathed to the plaintiff; and at that time the said Perry Brown was the owner of the stocks and real estate in controversy in this case, which, so far as the evidence discloses, was practically all the property that he had at that time.

11. That on November 9, 1889, the said Perry Brown executed and delivered to Hartford P. Brown, the defendant, a letter of attorney with general powers, recorded in letter of attorney book No. 4, page 249. There is no evidence, however, that the defendant ever accepted the said power of attorney or ever transacted any business whatever by virtue thereof.

12. That in the spring of 1890, the defendant talked of being a candidate for register and recorder, and wrote plaintiff's hus-

band asking him to support him, but through some misunderstanding the defendant was persuaded that the plaintiff's husband would not give him support, and so informed his father, Perry Brown, upon his return from California in April of 1890; that at that time the said Perry Brown went to see the plaintiff and remained with her a short time, and shortly thereafter told others that the plaintiff had treated him like a hog and that he would never darken her doors again.

14. That Perry Brown thereafter never did go to see the plaintiff, nor did the plaintiff ever visit her father or call to see him during his last illness.

14. That on December 23, 1890, the said Perry Brown gave the defendant his interest in the banking firm of John Conway & Company, which interest at that time was worth about $5,500, executed a formal transfer thereof on the back of a copy of the articles of association of said firm, in the presence of witnesses, who signed the same at the request of the said Perry Brown.

15. That in the fall of 1890 said Perry Brown went to the state of Georgia, unattended and alone, and returned the next spring, and from that time until his death attended to office work of the Rochester Heat and Light Company.

16. That on December 15, 1891, said Perry Brown gave the defendant one hundred shares of People's Insurance Company stock, of the par value of $37.50 per share and a market value of about $3,300, mentioned in the bill of complaint, by transferring the same to him by power of attorney in blank on the back of two certificates of stock, each for fifty shares, in the presence of witnesses, who signed the same at the request of the said Perry Brown, and the transfer was duly made upon the books of the company.

17. That on August 6, 1892, the said Perry Brown gave one hundred and four shares of stock in the Rochester Heat and Light Company, of the value of $1,000, to the defendant, transferring the same by powers of attorney on the backs of the certificates therefor, in the presence of a witness, who signed the same at the request of the said Perry Brown; and the said stock was transferred upon the books of the company, with the exception of one share, which was allowed to remain on the books in the name of Perry Brown to enable him to act as director of the company thereafter.

18. That on August 6, 1892, the said Perry Brown, by three separate deeds of conveyance, conveyed all his real estate, of the value of about $20,000, in the borough of Rochester, to the defendant. The acknowledgments of said deeds were taken by Charles W. Hurst, a notary public, well acquainted with the said Perry Brown, and the deeds were produced by him and signed in the presence of the notary.

19. That the said deeds were recorded on August 16, 1892.

20.. That the defendant, ever since the date of the transfers of the stocks, has controlled the same, and upon the execution and delivery of said deeds took possession of the lands described therein, and has ever since controlled the same.

21. That the evidence disclosed the fact that Perry Brown had great affection for the defendant and his family, and after said assignments and deeds had all been made, he stated that he had disposed of all his property and business to his son Hartford by deeds, and when he was asked why he had done that when he already willed the property to the defendant, replied that he was afraid that after his death litigation might take place, and that the transfer of the property would prevent all that.

22. That no fraud, misconduct or undue influence on the part of defendant has been shown, nor that the defendant stood in the relation of confidential adviser to the said Perry Brown.

23. That in the fall of 1892, sometime prior to his last illness, said Perry Brown suffered from an abscess in his back, but from which he soon obtained relief under the care of a physician.

Captain Brown was a man of strong likes and dislikes, quick to take an affront and slow to forget. In all the affairs of life, he formed and had his own opinions, and great determination in defending those opinions. Independent in thought and action, contrary in mind and spirit, he repulsed flattery and defied contradiction.

Shortly after the death of his wife, which occurred in June, 1889, he determined upon a trip to California, and on September 23, he wrote with his own hand, executed in the presence of witnesses and delivered to John Conway a last will and testament, with the instructions that after his death the same should be delivered to his son Hartford. In and by this instru-

ment he devised and bequeathed all his property, real and personal, to his son Hartford P. Brown, with the exception of one hundred shares of stock in the People's Insurance Company, of Pittsburg; and on November 9, of the same year, just before leaving for California to spend the winter, he made and executed to his son, Hartford P. Brown, letters of attorney, with general power to act. It does not appear that Hartford P. Brown ever accepted said power or did any act or thing thereunder.

On Perry Brown's return from California in April, 1890, he made his home with his son, Hartford P. Brown. The only thing that cropped out in this case whereby any feeling seemed to have arisen between the plaintiff and the defendant, wherein the defendant is shown to have said anything to the father, Perry Brown, by which he might have been influenced in his affections or feelings towards his daughter, the plaintiff, was at this time. It appeared that Hartford P. Brown was thinking of being a candidate for register and recorder, and some mistake between himself and S. R. Campbell, the husband of the plaintiff, arose in reference to the position the said Campbell would take in the matter, and the defendant was led to believe that Campbell would be antagonistic to him, and upon his father's return so informed him. The father thereupon paid a visit to his daughter in Beaver Falls, and from her testimony, though held to be incompetent, yet even if taken to be admissible to relate what occurred there, their feelings were not of the most cordial kind ; and the father, who had not seen his daughter for many months, after that interview, left in high dudgeon, and never again darkened her door, and made complaints to others that he had been treated like a hog. Captain Brown from this time on lived with his son Hartford, the defendant, and was engaged in the office work for the Heat & Light Gas Company, attending to business for that company and his own business from time to time, with the exception of an interval of a few months in the winter of 1890–1891, when he was absent in Georgia, which trip he made unattended and alone, returning early in the year 1891. Between December 23, 1890, and the time of his death, which occurred on November 18, 1892, the transfers and conveyances of which the plaintiff complains were made—the first transfer having been made on December, 23, 1890, and the last

on August 6, 1892. It is not necessary to recount all the circumstances attendant upon these transfers and conveyances more than to say that at the time they were made Perry Brown was of sound and vigorous mind, although physically somewhat crippled with age. Prompted by a great love for his son, the bad treatment which he had received at the hands of his daughter, and of which he complained to others, and that he had stated that he had already given his daughter considerable help, and the will having been made prior to the trouble between Hartford and Campbell, fully account for the conduct of Perry Brown in making the transfers and conveyances complained of by the plaintiff.

Upon the hearing in this case the testimony of the plaintiff was admitted, as was also that of her husband, under objection and exception by the defendant. In this case the plaintiff claims by descent to be entitled to an interest as heir in the property of her deceased father. In this view of the case the plaintiff is an incompetent witness, as is also her husband. Under the Act of May 23, 1887, sec. 5 (*e*), P. L. 158, which provides that where a party to a contract is dead, no other person whose interest shall be adverse to the right of the decedent shall be a competent witness to any matter or thing occurring before the death of the decedent, unless the issue or inquiry be devisavit vel non, a plaintiff in ejectment who claims by descent from his father, and that a voluntary deed executed by the father to the defendant and other of his children is void because of the father's incapacity, is not a competent witness as to matters occurring before the father's death: King v. Humphreys, 138 Pa. 310; Crothers v. Crothers, 149 Pa. 201.

There is no doubt that the defendant, being the surviving party to a contract with his father, was an incompetent witness. In considering clause "*e*" it is discovered that the intention was to establish the principle of fairness between contending interests, having no regard to the parties to the action. The question now is, What is the thing or contract now in action? Who were the parties originally interested therein? Did any of them die or become a lunatic? If both are living and sane, they are presumed to be able to take care of themselves, and all persons may testify to any relevant fact, save as stated in clauses *a*, *b*, *c*, and *d*. If, however, either party is dead or a

lunatic, an inequality probably exists which the act strives to remedy. The further questions then arise: Has the right of the dead or lunatic party passed to a party on the record? Does this party represent this right in the depending action? Was the right directly involved in the subject in controversy? If the answers are yes, the living party can no longer be heard as to any matter occurring before the death of the other or the adjudication of his lunacy. For a similar reason no one else can be heard as to such matters, if his interest be adverse to the right in controversy of the dead or lunatic party; but any one may, no matter what may be his interest in the action, testify to matters occurring after the death of the party or the adjudication of his lunacy. See McPherson, Competency of Witness.

In this case the defendant, being a surviving party to the transfers and the conveyances, cannot be heard; and the plaintiff, having an interest adverse to the rights of the decedent, the other party to the contract or contracts, is an incompetent witness, and she being incompetent renders her husband also incompetent.

24. That at the time the assignments and deeds were made, the said Perry Brown was strong, physically, for a man of his age, and of sound and unimpaired mind.

25. That after the said assignments and conveyances had all been made, the said Perry Brown stated that he had already given Mrs. Campbell, the plaintiff, and her husband, what was a large amount, and thought that they were pretty well provided for, and that any one that treated him ill could not expect any favors from him.

26. That in transferring the stocks and making the conveyances above referred to, the said Perry Brown intended to make a gift of those stocks and real estate described in said deeds to the defendant, and at the making of said gifts he was of sound mind and knew the nature of his acts and their effect upon him in relation to his estate, and that his intention was not produced by any undue influence, fraud, or misconduct on the part of the defendant.

27. That on August 27, 1894, the defendant, as executor of the will of Perry Brown, filed his final account, showing a balance of $326.56 due the accountant.

28. That the plaintiff in this proceeding filed exceptions to

said account, for the reason that the accountant had not charged himself with the John Conway & Company bank stock, the Rochester Heat and Light Company stock, and the People's Insurance. Company stock, described in the bill of complaint in this case, and thereupon the orphans' court appointed an auditor to pass upon said exceptions and restate the account if necessary.

29. That the meetings of said auditor were attended by the exceptant and her counsel, and after investigation, argument and reargument, the auditor upon deliberation dismissed the exceptions so far as they related to said stocks and submitted his findings to said counsel for exceptant, whereupon the exceptant's counsel, in open court and by leave of the same, withdrew the said exceptions to the said account so far as they pertained to said stocks, and the auditor's report, without any modification, was filed and confirmed nisi on October 23, 1896, which confirmation became absolute in five days thereafter, and no appeal was taken therefrom.

30. That the said Perry Brown could read and write, and was fully acquainted with the value of his property.

31. That the cause of Perry Brown's death was pneumonia.

### CONCLUSIONS OF LAW.

1. The plaintiff, Amanda E. Campbell, is an incompetent witness, and her testimony as to matters occurring in the lifetime of Perry Brown should be stricken out, as should also that of her husband, S. R. Campbell.

2. The transfer of the interest in the firm of John Conway & Company, the People's Insurance Company stock, the Rochester Heat and Light Company stock, and the conveyances of the real estate by the three deeds of August 6, 1892, were gifts, and should be sustained.

3. That said transfers and conveyances, being gifts from father to son, every presumption of law is in favor of their validity and fairness.

4. That when the plaintiff filed her bill and called upon the defendant to answer it, she thereby made him competent for that purpose; and if the answer is responsive to the bill, the plaintiff is bound by it, unless she overcomes the effect of it by the requisite proof.

5. The answer being responsive, the effect of it cannot be overcome, except by the testimony of two witnesses, or at least the testimony of one witness and corroborating circumstances equivalent to the weight of the testimony of a second witness.

6. That said Perry Brown, being of sound mind, had the undoubted right to dispose of his property by making gifts of the whole of it to his son.

7. The questions arising in this case concerning the stocks in suit are not res adjudicata.

8. That the bill should be dismissed.

*Error assigned* was in dismissing bill in equity.

*Alfred P. Marshall*, with him *John M. Buchanan* and *Wm. A. McConnell*, for appellant.—Where there is a confidential relation between the parties, the burden is upon the party claiming the benefit, to show affirmatively the utmost fairness : Darlington's App., 86 Pa. 513 ; Boyd v. Boyd, 66 Pa. 283 ; Greenfield's Est., 14 Pa. 505 ; Miskey's App., 107 Pa. 629 ; May on Fraudulent Conveyances (2d ed. Worthington), 494 ; Yardley v. Cuthbertson, 108 Pa. 459 ; Worrall's App., 110 Pa. 364.

Plaintiff and her husband were competent witnesses : Howser v. Griesing, 7 Lanc. Law Rev. 23 ; Eichhorn's Est., 24 W. N. C. 364 ; Corson's Est., 27 W. N. C. 84.

*Richard S. Holt*, for appellee, was not heard, but cited in his printed brief : Crothers v. Crothers, 149 Pa. 201 ; Ralston v. Turpin, 25 Fed. Rep. 19 ; Uhlich v. Muhlke, 61 Ill. 499 ; Harrison's App., 100 Pa. 458 ; Blume v. Hartman, 115 Pa. 32 ; Caldwell v. Anderson, 104 Pa. 199 ; Boyd v. Boyd, 66 Pa. 283 ; Clark v. Clark, 174 Pa. 309.

PER CURIAM, October 25, 1897 :

The first five specifications allege error in excluding the several offers of testimony recited therein. The sixth to ninth, inclusive, complain of the findings of fact therein set forth. The tenth to thirteenth, inclusive, allege error in the several conclusions of law stated therein, and the fourteenth charges error in the decree dismissing the plaintiff's bill.

We have carefully considered the record, including the evi-

dence relating to these specifications, and are satisfied that neither of them should be sustained; nor do we think that any of them requires discussion. Finding no substantial error in either of the trial judge's rulings on questions of evidence, or in his conclusions of fact and law, the decree should not be disturbed.

Decree affirmed and appeal dismissed at appellant's costs.