King, Administrator, *v.* King, Appellant.

Argued April 10, 1929.

Before TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Joseph Levy,* and with him *C. L. Shaver,* for appellants.—The exclusion of evidence of decedent's indebtedness to defendant was error: Vitagraph Co. v. Swaab, 248 Pa. 478.

Declarations of decedent made in the absence of defendant, intended to defeat the latter's right to possession of the bonds were improperly admitted: Mickey v. Hardin, 79 Pa. Superior Ct. 592; Wonsetler v. Wonsetler, 23 Pa. Superior Ct. 321.

It was error to hold that the administrator was disqualified as a witness because of adverse interest: Edmundson's Estate, 259 Pa. 429; Gongaware's Estate, 265 Pa. 512; Crothers v. Crothers, 149 Pa. 201; Fowler v. Smith, 153 Pa. 639.

*Norman T. Boose,* and with him *Budd B. Boose,* of *Boose & Boose, J. C. Lowry* and *P. G. Cober,* for appellee.—Evidence of decedent's indebtedness to defendant was properly excluded: Patterson v. Hughes, 236 Pa. 315; Cake v. Cake, 162 Pa. 584; Commonwealth v. McManiman, 27 Pa. Superior Ct. 304.

OPINION BY BALDRIGE, J., July 2, 1929:

The administrator of Anne King brought this action in replevin to recover from S. J. King, the appellant, two liberty bonds of one thousand ($1,000) and five hundred ($500) dollars, respectively. A verdict was rendered in favor of the plaintiff and judgment entered thereon. Motions for new trial and judgment n. o. v. were refused and this appeal followed.

Anne King died intestate, September 24, 1924, at

the age of eighty. She left to survive her five children. The defendant, one of the children, was unmarried and he and his mother lived together for many years, and for several years prior to decedent's death, a sister, Amanda, also resided in the household. It was admitted that Anne King owned the bonds, but it is contended that she had been indebted to her son who had paid her taxes and made a number of other expenditures in her behalf, in the sum of seventeen hundred and forty ($1,740) dollars; that on May 31, 1924, she acknowledged this indebtedness and paid her son, in cash, eighty-eight ($88) dollars on account thereof, and delivered to him, as collateral security, the bonds in dispute for the balance.

On July 29, 1925, the appellant made a demand upon Charles F. King, administrator and this appellee, for the payment of the moneys due, and gave notice that unless the bonds were redeemed they would be sold. In pursuance of this notice and after due advertisement, the appellant caused the bonds to be sold at public sale, and he became the purchaser thereof. It was testified by witnesses called upon the part of the appellee that these bonds belonged to the decedent and that possession was obtained by this appellant by extracting them from a chest while his mother was in a dying condition.

The first of the four assignments of error relate to the court sustaining an objection to the testimony of Charles F. King. He was called as if on cross-examination to prove the statement made by the mother that she was indebted to her son S. J. King. The witness was objected to on the ground that he was incompetent. The court ruled as follows: "The defendant having set up a settlement as having taken place on or about the 31st of May, 1924, regardless of the other question raised in this objection, we think

this testimony is inadmissible, and an exception is noted to the defendant." Yet when it came to charge the jury, the judge said: "The plaintiff sets up that the defendant got charge of these bonds illegally; that she didn't owe him anything; if she didn't owe him anything at the time he got possession of these bonds, then your verdict would be for the plaintiff, in the sum of fifteen hundred and five ($1,505) dollars, the value of these bonds that he sold them for at public sale." The judge's attention was specially called to that part of his charge by attorney for the appellant, and he was reminded of his ruling in excluding the testimony of Charles F. King, offered for the very purpose of proving that the mother did owe the appellant, and its exclusion because he viewed the suit as based on a settlement. The court made no attempt to correct the impression which must have been made on the jury in his ruling on that evidence.

The court evidently overlooked the pleadings as the affidavit of defense expressly avers that there was an indebtedness due from Anne King to this appellant and that the amount thereof had been agreed to at their meeting on May 31, 1924, that the bonds were pledged to him as collateral security for the payment of this indebtedness. Whether or not she actually was indebted was a very important issue to be determined. It is highly improbable that if she had not been indebted the bonds would have been delivered as alleged by the defendant. The question of indebtedness was a very essential fact for consideration.

The court sustained an objection to Charles F. King when he was called later by the appellant, as his witness, on the ground of incompetency under the Act of 1887.

The Act of May 23, 1887, P. L. 158, provides "(e) Nor where any party to a thing or contract in action

is dead ....... and his right thereto or therein has passed either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party.''

To disqualify a witness under this clause, his interest must be adverse to that of the decedent. It is the interest which is adverse—not the adverse testimony that disqualifies him. The witness in this case was not a surviving or remaining party to a contract, nor was his interest adverse to the right of the deceased. On the contrary, his interest is adverse to the claim of the appellant and if it be allowed, he would receive less from his mother's estate, and therefore he was a qualified witness and his testimony should have been received: Edmundson's Estate, 259 Pa. 429; Horne and Company v. Petty, 192 Pa. 32.

As we are returning this case to be retried, it may be well to indicate our views respecting the question raised to the admissibility of declarations of the decedent as to her ownership of the bonds. While self-serving statements are ordinarily not admissible to prove title in the one making them, unless made in the presence of the adverse party, there is an exception to this general rule where the party making the statement in support of title to the property is in actual possession thereof: Scheid v. Storch, 271 Pa. 496.

There was a dispute as to when the bonds passed out of the possession of the decedent. If the jury believe that statements of ownership were made while in possession of the bonds, they are admissible, otherwise they are not.

590

The appellant also assigned for error that part of the judge's charge instructing the jury that the defense was an affirmative one and that the burden was upon the defendant to prove by the weight of the evidence his contention. We are aware that this was not alleged to have been a gift of property; then the burden is on the one claiming to be the donee of the property: Maxler v. Hawk, 233 Pa. 316. If the property had been stolen or the owner had been defrauded thereof, as alleged by the appellee, the burden would be on the possessor to prove his title: Robinson v. Hodgson, 73 Pa. 202. Assuming the appellant did not acquire possession by any fraudulent means, it was conceded that the bonds originally belonged to the mother of the claimant; that she was eighty (80) years of age, and that they were delivered in consideration of the former indebtedness. Not only relation of mother and son existed, but they lived in the same house. Under these conditions, we are of the opinion that the burden was upon the son to show that he had a legal title to the property.

The judgment is reversed and a new trial awarded.