## Williams' Estate.

Argued January 24, 1940. Before SCHAFFER, C. J., DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*M. J. Martin,* with him *O'Malley, Hill, Harris & Harris,* for appellant.

*J. Donald Ryan,* for appellee.

OPINION BY MR. JUSTICE STERN, March 27, 1940:

In 1922 Marion Elizabeth Williams, then three years of age, was the owner of an undivided one-half interest in two parcels of real estate inherited from her father, and also of an undivided one sixth interest in several parcels inherited from her grandfather. Her guardian, Lackawanna Trust Company (subsequently merged into Scranton Lackawanna Trust Company) petitioned the Orphans' Court, under the Revised Price Act of June 7, 1917, P. L. 388, for leave to join with her co-owners in a private sale and conveyance of these properties, one of them to her mother and the others to her uncles Paul H. Williams and J. Arch Williams. The petition recited that "Paul H. Williams and J. Arch Williams have obligated themselves[1] to pay to the guardian, the Lackawanna Trust Company, the sum of

---

[1] A few days before the filing of the petition they had executed an agreement with the guardian reciting the facts and promising to make these payments to the guardian.

$15,000.00 either during the minority of said ward or upon her becoming of age, but will in any event pay to the guardian, the Lackawanna Trust Company, interest at six (6) per cent per annum on said sum, payable monthly. . . . All of the parties interested in said real estate sui juris have contracted to sell their interest . . . at private sale to Paul H. Williams and J. Arch Williams for the sum of $1.00 cash.[2] . . . Your petitioner, guardian of Marion Elizabeth Williams, has agreed, with the consent of the court, to convey the interest of said minor child in and to the real estate . . . in consideration of receiving the sum of fifteen thousand ($15,000.00) dollars cash or an annuity thereon until the said ward arrives at the age of twenty-one years." The court signed a decree ordering the Lackawanna Trust Company to make the sale of the minor's interest in the properties and to execute and deliver deeds therefor upon the receipt of $1.00 each for the several parcels, security being first entered by the guardian in the sum of $300.

The uncles paid interest on the $15,000 until 1928, when Paul H. Williams died and from his estate $7,500 was paid to the guardian. J. Arch Williams continued to pay interest on the remaining $7,500 until June 15, 1936, when he was obliged, by reason of financial reverses, to discontinue such payments.

When the guardian filed its final account in March, 1937, it failed to set forth therein this balance of $7,500 and the accrued interest thereon, due to the minor, and the latter, by her next friend, Maud M. Cottle, who was subsequently appointed by the court as substituted guardian, filed an exception. The guardian, in its answer, repudiated any responsibility for this item, alleg-

---

[2] The petition in other paragraphs, however, enumerated substantial items of consideration that were to be given to the minor's mother, who was one of the owners, and stated that an independent contract had been entered into between the purchasers and the other two owners.

ing that it was due from J. Arch Williams and not guaranteed by the guardian. The court held that, under section 15 of the Revised Price Act, the guardian should have exacted from the purchasers a mortgage securing the payment of the $15,000, and that this duty was not relieved by the court's decree approving the sale. Accordingly, the court sustained the exception and, by order of August 4, 1937, directed the guardian "to restate its account, *charging itself* with the sum of $7,500.00 as of June 15, 1936." In March, 1938, the guardian filed a restated account, but, instead of charging itself, as directed by the court, with the sum of $7,500, stated that amount as a "balance payable by J. Arch Williams." The court, in June, 1938, refused to confirm the account as thus restated, and in April, 1939, the substituted guardian petitioned for a citation upon the Scranton Lackawanna Trust Company to show cause why it should not be held in contempt of court for failure to file a restated account in conformity with the court's decree. On September 21, 1939, the court, for a technical reason here unimportant, dismissed the petition for a citation; in the course of its opinion, it stated that "the record in this estate reverts to August 4, 1937, the date of the definitive decree surcharging the former guardian." Thereupon Scranton Lackawanna Trust Company filed an exception to the *opinion* of the court, and followed it by the present appeal.

It is immediately obvious that appellant is attempting to escape from the consequences of its failure to appeal from the court's decree of August 4, 1937, by assuming to treat the court's *opinion* of September 21, 1939, as the definitive decree in the case. It assigns as error that the "court erred [on September 21, 1939] in surcharging the guardian as of August 4, 1937." The opinion of September 21, 1939, imposed no surcharge as of August 4, 1937, or any other time; it merely stated—what was clearly the fact—that a surcharge *had been* imposed by the order of August 4, 1937. The only order

made by the court on September 21, 1939, was one refusing the petition of the substituted guardian for a citation, and as that order was in favor of appellant the latter could not, and, of course, does not, appeal therefrom, nor has there been *any* order or decree against appellant within the period prescribed for appeal. When the court, by decree of August 4, 1937, ordered appellant to "restate its account, *charging itself* with the sum of $7,500.00 as of June 15, 1936," this was a surcharge, because, if the decree was obeyed by appellant, the latter's liability became finally and irrevocably fixed thereby. It was therefore a definitive decree. As such it was the subject of appeal: see *Hand's Estate*, 288 Pa. 569, 570; *Kennedy's Estate*, 328 Pa. 193, 195. A decree merely directing an executor to file an account is not a final decree from which an appeal lies: *Parmer's Estate*, 237 Pa. 229, 231; but if, as held in that case, the decree also orders the executor to charge himself in the account with a specified sum, this, being equivalent to a surcharge, is appealable,—a ruling all the more applicable in the present case because here, *after* the account was filed, the court, in adjudicating it, determined that the guardian was liable for $7,500, and ordered it to file a restated account charging itself accordingly. In *Estate of I. L. Crist*, 106 Pa. Superior Ct. 571, where the court below sustained exceptions to the account of an executrix and directed her to restate the account and to include therein, as assets of the estate, the moneys in a certain bank account, it was held (p. 581) that this was, as to the accountant, a final decree.

It follows that, by appellant's failure to appeal from the court's decree of August 4, 1937, that decree became res judicata as to appellant's liability. While, therefore, there is no substantive question now before this court for determination, it may not be amiss to add that appellant would not in any event be entitled to relief from the surcharge made against it. Section 15 of the Revised Price Act of June 7, 1917, P. L. 388, pro-

vides that "Whenever, under the provisions of this act, the court has power to authorize or confirm a sale of real estate, the same may be made upon such terms as the court shall approve; *all unpaid purchase money to be secured on the premises by mortgage.*" This is a direct mandate upon fiduciaries and it should scarcely be necessary to point out that its observance is of the highest importance, as exemplified in the present instance where the guardian sold and conveyed all the minor's interest in real estate and agreed to accept the purchase money at any time within eighteen years thereafter, the account meanwhile being wholly unsecured; the unfortunate result is not surprising. Nor can appellant claim protection because of the court's decree authorizing and directing the sale. It was appellant's duty to appear for its ward (section 4 of the act), and to see that her interests were protected. Not even the court could authorize it to convey the minor's share in the real estate without taking a mortgage as security. The court had no discretionary power in that regard, since the law specifically established this requirement. As a matter of fact, the decree did not pretend to cover the matter of securing the unpaid purchase money, nor did it prescribe any detailed conditions of the sale. This was probably due to the fact that no effort was made to apprise the court of the particular terms, for the agreement itself was neither attached to the petition nor, as far as the record indicates, produced for examination by the court at the time the decree was signed. While it would no doubt have been better had the court investigated this phase of the transaction and expressly ordered that a mortgage be taken, its decree did not actually authorize appellant to make the conveyance without exacting security for the payment of the purchase money. The court may well have assumed that appellant would perform its statutory duty of protecting the minor by obtaining such a mortgage. By failing to do this appellant incurred liability notwithstand-

104

ing the decree: *James v. Faulk*, 54 Ala. 184; *Shepard's Heirs v. Shepard's Administrator*, 19 Fla. 300, 319, 320; *Bowen v. Shay*, 105 Ill. 132, 136-138.

Appellant contends that no mortgage was required in this instance because the sale was not for $15,000 but for $1.00. This does not merit discussion; no fiduciary would have dared to petition a court for the sale of a minor's share in valuable real estate for $1.00 as being to the interest and advantage of the minor, nor would any court have authorized such a sale. It is clear from the petition that the minor's uncles were to pay $15,000 for her interest in the various properties, and the nominal consideration of $1.00 was stated merely for conveyancing or other formal purposes; otherwise it would have constituted a crass and culpable attempt to avoid the statutory provision that the purchase money should be protected by a mortgage.

Under section 8 of the Revised Price Act and the many decisions of this court, the title transferred in pursuance of the court's decree is indefeasible in the grantees. But appellant, as guardian, is, for the reasons indicated, liable to its ward for the loss of the $7,500 purchase money due to the nonperformance of its legal duty.

The appeal is dismissed.