Donsavage Estate.

Argued November 11, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward E. Hosey,* with him *John H. Hibbard,* for appellant.

*Nelson A. Bryan,* with him *John F. O'Malley* and *Joseph P. Olexy,* for appellees.

OPINION BY MR. JUSTICE JONES, March 22, 1966:

Benjamin Donsavage (decedent), died, testate, on January 15, 1964, survived by a wife and three children. Decedent's will, after providing a bequest of tools and sporting equipment to a nonrelative, left the rest of his assets "to my estate" and appointed one Helen Mockler as the "administrator" of his estate.[1] This will was probated and letters testamentary issued to Helen Mockler.

On April 14, 1964, the personal representative filed an inventory of the estate. Decedent's widow and children (petitioners), then petitioned the Orphans' Court of Luzerne County for a citation upon the personal representative to show cause why she should not file a supplemental inventory[2] to include therein, as assets of decedent's estate, certain specifically identified stock of twelve different corporations. The personal representative answered this petition and a hearing was held before the court. After hearing, the court directed the personal representative to include the stock in a supplemental inventory. From that decree the personal representative has appealed.[3]

---

[1] Decedent's widow elected to take against the will.

[2] We will treat this petition as an "objection to the inventory" filed under §405 of the Fiduciaries Act of 1949 (Act of April 18, 1949, P. L. 512, as amended by the Act of February 23, 1956, P. L. (1955) 1084, §3, 20 P.S. §320.405). Cf. *Kevra Estate*, 173 Pa. Superior Ct. 229, 232, 96 A. 2d 159.

[3] *In the capacity of personal representative,* Mrs. Mockler should have no right of appeal from a decree which directed her to include in the inventory as an estate asset the stock which she claims *in her individual capacity (Ansel v. Kyger,* 60 Ind. App. 259,

At the hearing which led to the instant decree, the court considered two issues: (a) whether the personal representative should file a supplemental inventory and (b) the ownership of the stock vis-a-vis the estate and the personal representative as an individual. Initially, the propriety of such procedure must be determined. In *Rogers Estate,* 379 Pa. 494, 495, 496, 108 A. 2d 924 we said: "In the settlement of a decedent's estate disputed title to property should not be determined upon exceptions to an inventory and appraisement which happens not to include the property claimed on behalf of the estate. The function and object of an inventory and appraisement in a decedent's estate is to fix *presumptively* the existence of property in the possession of the fiduciary and the value thereof. This is only *prima facie* evidence of ownership and value. Such listing does not affect the true ownership and value: [authorities cited]. The question of ownership is of interest to creditors, federal and state taxing authorities, and others. Such title, therefore, should not be finally determined until after an audit, with due statutory notice. . . . Nonetheless, the proper procedure is as we have hereinabove indicated and is, therefore, to be followed." See also: *Higbee v. Koziol,* 383 Pa. 116, 118, 117 A. 2d 707. *Rogers* and *Higbee* would proscribe the procedure followed in the court below. However, by an amendment to the Fiduciaries Act of 1949, supra, the teaching of *Rogers* and *Higbee* was nulli-

---

110 N.E. 559). However, in view of *Crist Estate,* 106 Pa. Superior Ct. 571, 162 A. 478, which impliedly approved such practice, we will not dismiss the instant appeal. While ordinarily a decree directing the filing of an inventory is not appealable *(Parmer's Estate,* 237 Pa. 229, 85 A. 148), the instant decree, in addition to directing the filing of an inventory, directs the personal representative to charge herself with this stock and therefore is appealable: *Williams' Estate,* 338 Pa. 98, 102, 12 A. 2d 103; *Crist Estate,* 106 Pa. Superior Ct. 571, 581, 162 A. 478.

fied:[4] "Objections to the inventory may be made by any party in interest at any time up to and including the time fixed by rule of court for making objections to the first account of the personal representative. Such objections in the discretion of the court may be heard at the audit of the account. Objections to the inventory also may be made in the form of objections to the account." (Art. IV, §405, added 1956, February 23, P. L. (1955) 1084, §3, 20 P.S. §320.405). Section 405 gives wide latitude to the court in determining *when* objections to the inventory may be heard and the procedure adopted by the court below was clearly within its discretion.

The petitioners, objecting to the inventory filed, averred, inter alia: (1) that "at the time of his death, [decedent] was the owner of the following listed corporate common stocks registered in his name: [followed by a list of stock]"; (2) this stock was an asset of decedent's estate which had not been inventoried. By way of answer, the personal representative averred, inter alia: (1) that, while the stock was registered in the decedent's name, "at the time of his death" he did not own them; (2) that the stock was not an asset of the decedent's estate; (3) that on January 12, 1964—three days prior to his death—decedent had endorsed in blank the stock certificates and had delivered them as a gift to the personal representative *as an individual* and that such certificates had remained in her exclusive possession until decedent's death.

The petitioners' case rested solely upon those portions of the petition and answer—offered and received in evidence—which contained an admission that at the time of his death the stock certificates were registered in the decedent's name and had been in decedent's possession until three days prior to his death;

---

[4] See: Commissioners' Comment on amendment.

from such registration and recency of conceded possession, the petitioners contend, flows a *presumption* of ownership sufficient to establish a *prima facie* case. It was the petitioners' burden to prove *ownership* of the securities by the decedent when he died;[5] if and when petitioners sustained such burden it then became the burden of Mrs. Mockler to come forward with evidence to establish the validity of the alleged gift inter vivos to her of the stock: *Henes v. McGovern,* 317 Pa. 302, 309, 311, 176 A. 503; *Carr Estate,* 371 Pa. 520, 523, 92 A. 2d 213.

The fact that, at the time of death, stock is *registered* in the name of the decedent and was, concededly, possessed by him three days prior to his death gives rise to a *presumption,* rebuttable in nature, that the *ownership* of the stock was in the decedent.[6] Cf. *Great*

---

[5] "If it be claimed that testator owned other property which either came or should have come into the hands of the accountant the burden is upon the party so claiming to show first of all that the omitted [from the inventory] property was the property of the testator.": *Cutler's Estate,* 225 Pa. 167, 170, 171, 73 A. 1111.

[6] In at least two instances, the legislature has granted recognition to the presumption which flows from the registration of stock: (a) if stock is registered in a decedent's name, the Orphans' Court is given exclusive jurisdiction to determine the title to such stock: Orphans' Court Act of 1951, P. L. 1163, §301, as amended, 20 P.S. §2080.301; *Rankin v. Kabian,* 414 Pa. 554, 558, 201 A. 2d 424; (b) the corporation which issued the certificates, until due presentment for registration of the transfer of such securities in registered form, may treat the person whose name is registered on the stock as entitled to exercise all the rights and powers of the owner insofar as the corporation is concerned: Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §8-207, 12A P.S. §8-207. See: *McClements v. McClements,* 411 Pa. 257, 261, 191 A. 2d 814; *Connell's Estate,* 282 Pa. 555, 128 A. 503. That a certificate of stock is evidence of ownership of the stock, see: *Mills v. Jacobs,* 333 Pa. 231, 233, 4 A. 2d 152; *People's Bank v. Kurtz,* 99 Pa. 344, 349. See also: *Swaim v. Martin,* 302 Ky. 381, 194 S.W. 2d 855; *Pricer v. Simonton,* 134 Kan. 211, 5 P. 2d 835; *Head v. Wood,* 20 Ill. App. 2d 97, 155 N.E. 2d 348, 351.

*Northern Ry. Co. v. Sutherland,* 273 U.S. 182, 188, 47 S. Ct. 315, 317; *Cummings's Estate,* 153 Pa. 397, 400, 25 A. 1125.; *Heller v. Fabel,* 290 Pa. 43, 48, 138 A. 217; *Wohleber's Estate,* 320 Pa. 83, 84, 85, 181 A. 479; 14 C.J. §709; 18 C.J.S. §264, pp. 730, 731. Common sense dictates that, once it has been established by competent evidence or by admission, that stock certificates were registered in the decedent's name when he died and in his possession so shortly before he died, the person who disputes decedent's ownership of the stock at that time must come forward with evidence to sustain such lack of ownership. Cf. *Thomas v. Waters,* 350 Pa. 214, 220, 221, 38 A. 2d 237. In so ruling, the court below was correct.

Petitioners having shown that all the disputed stock was registered in decedent's name and in his recent possession, then Helen Mockler had the burden of going forward with evidence to show that she, not the decedent, owned the stock when he died; more specifically, she then had the burden of proving that the decedent, with donative intent, had delivered, either actually or constructively, the securities to her and that the decedent had divested himself of and invested her with the requisite dominion over the stock: *Brozenic Estate,* 416 Pa. 204, 206, 204 A. 2d 918; *Hosfeld Estate,* 414 Pa. 602, 605, 202 A. 2d 69; *Pronzato v. Guerrina,* 400 Pa. 521, 526, 527, 163 A. 2d 297. To establish such a gift inter vivos the evidence must arise not only from legally competent witnesses but also be clear, direct, precise and convincing: *Brozenic Estate,* supra, at 207; *Petro v. Secary Estate,* 403 Pa. 540, 543, 170 A. 2d 325; *Parkhurst Estate,* 402 Pa. 527, 167 A. 2d 476.

Helen Mockler's case was based upon certain oral testimony, the stock certificates and certain portions of her answer offered and received in evidence. The stock certificates had been endorsed by the decedent with the spaces on such certificates provided for the insertion of

the dates and the names of the transferees left blank; the time of endorsement of such certificates and the possession of such certificates at the .time of death was dependent upon oral testimony which will. be discussed infra. . The fact that decedent had endorsed the certificates in blank *per se* is neither controlling nor indicative of the existence of an intent that such endorsement operate as a gift: *Carr Estate,* 371 Pa. 520, 528, 92 A. 2d 213; *Thomas v. Waters,* 350 Pa. 214, 38 A. 2d 237; *Brown's Estate,* 343 Pa. 230, 22 A. 2d 821; *Packer v. Clemson,* 269 Pa. 1, 4, 112 A. 107. Cf. *Chapple's Estate,* 332 Pa. 168, 173, 2 A. 2d 719.

. While endorsement of the certificates in blank by the decedent *plus* the possession of such certificates by Helen Mockler at the time of decedent's death would raise a presumption of ownership[7] yet the fact of possession of such certificates by Helen Mockler has not been proven on this record by evidence of the necessary qualitative standard. It is clear beyond question on this record that, until three days before his death, the stock certificates were in decedent's possession and the possession and ownership by decedent of such certificates until such a short time before his death raises a presumption that such possession and ownership continued until his death, at least until it has been established by clear, direct, precise and convincing testimony that there had been a change in such possession and. ownership: *Kaufmann's Estate,* 281 Pa. 519, 532, 127 A. 133; *Tradesmen's National Bank & Trust Co. v. Forshey,* 162 Pa. Superior Ct. 71, 56 A. 2d 329; *Ryan v. MacDonald,* 151 Pa. Superior Ct. 607, 30 A. 2d 662. A status once estabished is presumed to continue until the contrary is shown: *Zuback v. Bakmaz,* 346 Pa. 279,

---

[7] *Stone v. Stone,* 277 Pa. 277, 121 A. 500; *Henes v. McGovern,* 317 Pa. 302, 176 A. 503; *Wohleber's Estate,* 320 Pa. 83, 181 A. 479; Wigmore on Evidence, §2515, vol. IX, p. 426.

282, 29 A. 2d 473. The record indicates that, after the death of the decedent, the physical possession of the stock certificates was in Helen Mockler but the question arises how did she obtain possession? While she claims that she received possession of these certificates three days prior to his death from the decedent by a hand delivery of them to her as a gift; such claim is not supported, as we shall demonstrate infra, by any competent testimony. Such portion of the oral testimony presented by her *that was competent* would indicate that she was the first person in decedent's home after his death, that at that time she was alone and that she was aware of the presence of these securities, all factual testimony evidencing that she had full opportunity to have received possession of these certificates other than by delivery from the decedent. Under such circumstances, Helen Mockler's physical possession of the certificates immediately after the decedent's death does not give rise to any presumption: cf. *Reading Trust Co. v. Thompson*, 254 Pa. 333, 337, 98 A. 953; *Brown's Estate*, 343 Pa. 230, 240, 22 A. 2d 821.

Helen Mockler produced the oral testimony of four persons, including her own testimony. Reed Travis, decedent's friend and former employment supervisor, shortly thereafter was notified of decedent's death; he immediately went to decedent's home where he met Mrs. Mockler and a Mrs. Girton; Mrs. Mockler told him that the decedent had made a gift three days prior thereto of the stock certificates which she then showed him and that she had had them over the three day period in her handbag; he described decedent's relationship with Mrs. Mockler; he testified that he had searched for and found two wills, one will wherein he was named the executor and a later will wherein Mrs. Mockler was named "administrator". Julia Girton, a friend of decedent of long standing with whom decedent and Mrs. Mockler mingled socially, stated that she

had notified Mrs. Mockler of decedent's death; at Mrs. Mockler's request, she had met her and Mr. Travis later at the home of the decedent; that Mrs. Mockler showed her the stock certificates and related to her the story of the gift to her of these certificates by the decedent. The testimony of both the witnesses Travis and Girton was received over petitioners' objection and later excluded from the record by the court. Insofar as such testimony contained Mrs. Mockler's related version of the gift inter vivos of the stock certificates and the incidents surrounding such alleged gift, the court acted properly in excluding such testimony.

Both Travis and Girton testified to that which Mrs. Mockler related concerning the circumstances of the alleged gift: such testimony was hearsay and, clearly, not admissible. It was an attempt to prove by these witnesses not what the decedent said to them but what Mrs. Mockler said the decedent had said to her. In Hartley v. Weideman, 175 Pa. 309, 317, 34 A. 625, we said: "It is text law that the declarations of a party must be proved by one who heard them. It will not do to show by A that B told him that he heard C make a certain statement, if it is C who is to be affected by the testimony. This evidence should have been excluded." See also: Johnson v. Peoples Cab Co., 386 Pa. 513, 515, 126 A. 2d 720. Counsel for Mrs. Mockler urge that such testimony was admissible as an exception to the hearsay rule, their theory being that it was part of the res gestae concerned with events which followed the sudden and unexpected death of the decedent and consisted of declarations of ownership by Mrs. Mockler who was then in possession of the stock certificates. In support of Mrs. Mockler's position, reliance is placed upon Scheid v. Storch, 271 Pa. 496, 500, 115 A. 841, Kaufmann's Estate, 281 Pa. 519, 533, 127 A. 133 and King v. King, 96 Pa. Superior Ct. 585, 589. In Scheid, Kaufmann and King, the declarations sought to be

shown were those of the decedent, were against the decedent's interest in *Scheid* and *Kaufmann* and were sought to be shown by the persons to whom such declarations were actually made. In the case at bar, although the declarations sought to be shown were those of the decedent and against decedent's interest, they were allegedly made to the donee of the gift and were sought to be shown by witnesses who did not hear the declarations made by the decedent but heard the donee of the gift state that the decedent had declared to her. Factually, *Scheid, Kaufmann* and *King* are not presently apposite. Moreover, the theory of competency on which Mrs. Mockler proceeds is that *her* statements to the witnesses Travis and Girton, even though self-serving, were admissible because she was *then* in possession of the stock certificates and her statements merely explained her possession; the major difficulty with this contention is that the record does not show such possession as would justify the application of the rule which is urged.

Accepting as a premise that the evidentiary rule which excludes self-serving statements or declarations does have an exception where the declarant is in actual possession of personal property and the declaration is in support of the title thereto and, assuming, arguendo, that the instant record would support a finding that the possession of the stock certificates was in Mrs. Mockler, the testimony of the witnesses Travis and Girton as to the declarations of Mrs. Mockler would still be inadmissible. The exception to the hearsay rule which counsel urge is based upon the theory that the hearsay rule is inapplicable where the testimony offered consists of "the acts and declarations of claim of title by the occupant [or the possessor]" of property which make "more definite and significant the nature of [such] person's custody or occupation [or posses-

sion]" of the property.[8] Even under that theory and again assuming, arguendo, the possession of the stock certificates by Mrs. Mockler at the time of decedent's death, the declarations and statements of Mrs. Mockler sought to be introduced through the testimony of the witnesses Travis and Girton went far beyond the type of statements and declarations contemplated as an exception to the hearsay rule. The exception to the rule admits self-serving statements and declarations only if they are restricted and limited to show the character of the possession or occupancy claimed; statements and declarations should be excluded if "their sole effect is to show the source of title, . . . and are but narrative of past transactions with respect to title." (*Radford v. Hill,* 185 S.W. 2d 129, 131). See: Wigmore on Evidence, supra, §1779, vol. VI, p. 212 et seq. The statements and declarations of Mrs. Mockler clearly were recitative of the source of her possession and ownership and beyond the scope of admissible statements and declarations.

The third witness for Mrs. Mockler was Dolores Dohman, a fellow-employee of Mrs. Mockler, who testified that two days prior to his death the decedent was transporting Mrs. Mockler and herself to their respective homes in his automobile; that, when the automobile skidded and an accident was narrowly averted, decedent then stated to Mrs. Mockler "Don't worry, if anything happens to me you are well provided for." Such testimony does not establish a gift inter vivos of these stock certificates: *Fahringer v. Strine Estate,* 420 Pa. 48, 216 A. 2d 82; *Reading Trust Co. v. Thompson,* 254 Pa. 333, 335, 336, 98 A. 953.

Mrs. Mockler next claims that she was competent as a witness to prove this gift. Mrs. Mockler appears in

---

[8] Wigmore on Evidence (3d ed.), vol. VI, §1779, p. 212 et seq.; *Sampson v. Sampson,* 4 S. & R. 329, 330; *Babb v. Clemson,* 10 S. & R. 419, 426, 12 S. & R. 328.

this proceeding in a dual capacity, both as personal representative and a claimant against the estate. Her competency is urged on three grounds: (a) the issuance of the citation upon her to show cause why the stock should not be included in a supplemental inventory rendered her competent; (b) that a prima facie case had been established that decedent gave her this stock and she thus represented the decedent's interest upon this record and her interest would not be adverse to that of the decedent; (c) since the citation was issued against her in her representative, rather than individual, capacity, she represented the estate and interest of the decedent.

The first ground is clearly without merit. It is Mrs. Mockler's theory that, having been called upon to include the stock in an inventory, she was rendered competent to testify to her ownership of the stock. The rule of the case law upon which she relies is that "where a decedent's estate is seeking to recover property allegedly owned by the decedent, and the defendant in possession of it is bound to admit such ownership", the defendant in possession is rendered a competent witness (*Armitage v. Ulrich,* 159 Pa. Superior Ct. 202, 204, 48 A. 2d 135; *Anderton v. Patterson,* 373 Pa. 441, 445, 96 A. 2d 111). However, that rule applies only where the defendant, during the decedent's lifetime, had been decedent's agent, attorney-in-fact, pledgee, etc., and the defendant is bound to *admit* the ownership in the decedent, a situation certainly not apposite in the case at bar. Reliance is inappropriately placed upon *Weaver v. Welsh,* 325 Pa. 571, 578, 191 A. 3; *Drob v. Jaffe,* 351 Pa. 297, 301, 41 A. 2d 407 and *Campbell v. Brown,* 183 Pa. 112, 120, 38 A. 516. In *Weaver,* the defendant was decedent's agent and was bound and competent to explain his stewardship when called upon to do so by decedent's personal representative; in *Drob,* the property had been transferred to Jaffe as security for a debt and

was subject to a lien in his favor and he was competent to make such explanation; in *Campbell,* the evidence clearly established a prima facie gift by the decedent to the defendant of the property and the defendant was representative of the interest of the decedent and competent to testify.[9] In the case at bar, Mrs. Mockler claimed the stock as a gift and not only was she not bound to admit the ownership of the decedent but, on the contrary, she claimed ownership in herself. She was clearly incompetent to testify under this theory.

Next, it is urged that, if decedent did, in fact, make a gift of this stock to Mrs. Mockler, then she represents the interest of the decedent and her testimony not being adverse to decedent's interest[10] would be competent. If the proven facts did establish such a gift, then she would be competent. To establish incompetency under the statute, the party who claims that the other is incompetent must claim through the decedent. In this action between those who claim as devisees and legatees under the decedent's will and one who claims to be a donee of this stock, it is obligatory to determine whether it has been prima facie established that a valid gift was made to donee in decedent's lifetime; if the transfer is not prima facie valid, the alleged donee is incompetent to testify against decedent's widow and children who represent decedent's interest by virtue of the will; if the transfer is prima facie valid, then the donee is the representative of decedent's interest, not the widow and children, and is rendered competent to testify.[11] In the case at bar, clearly, the record does not

[9] See also: *Ringer v. Finfrock,* 340 Pa. 458, 17 A. 2d 348; *Commonwealth Trust Co. v. Hugo,* 328 Pa. 116, 194 A. 904.

[10] *Hendrickson Estate,* 388 Pa. 39, 44, 45, 130 A. 2d 143; *Com. Trust Co. v. Szabo,* 391 Pa. 272, 280, 281, 138 A. 2d 85.

[11] See: *Pronzato v. Guerrina,* 400 Pa. 521, 531, 163 A. 2d 297; *Katz v. Lockman,* 356 Pa. 196, 200, 51 A. 2d 619; *Gallagher v.*

reveal such a prima facie valid transfer of this stock so as to place Mrs. Mockler in the status of representing decedent's interest; upon this ground no claim of competency can be predicated.

It is also urged that, since the citation was issued against Helen Mockler in her *representative* rather than *individual* capacity, she thus represents decedent's interest and was competent to testify. The thrust of the action was that ownership of this stock was in the estate of decedent and not in any other individual or entity; to determine the title it was necessary to call upon Mrs. Mockler in her *representative* capacity to account for such alleged assets of the estate. The mere designation eo nomine of Mrs. Mockler as executrix cannot render her representative of the *interest* of decedent when *in fact* she denied ownership in decedent and claimed ownership in herself.[12]

Lastly, Mrs. Mockler contends that the court below erred in not considering as of probative value certain portions of her answer. Paragraph 6 of the answer admitted registration of the stock in decedent's name when he died but denied he owned the stock for reasons stated in Paragraph 7. Paragraph 7 of the answer admitted omission of the stock from the inventory and then averred that the stock was not included in the inventory because Helen Mockler owned this stock by reason of a gift inter vivos the alleged facts of which gift she then proceeded to recite in the answer. When the petitioners offered in evidence that portion of Paragraph 6 which admitted registration of the stock in de-

---

*Rogan*, 330 Pa. 545, 199 A. 168; Brown, Pennsylvania Evidence, pp. 244, 245.

[12] In fact, the diversity and conflict of her interest may well have justified her removal as personal representative of this estate: *Purman's Estate*, 334 Pa. 238, 5 A. 2d 906; *Henry's Estate*, 54 Pa. Superior Ct. 274; *Bailey Estate*, 409 Pa. 222, 186 A. 2d 1; *Rafferty Estate*, 377 Pa. 304, 105 A. 2d 147.

cedent's name and that portion of Paragraph 7 which admitted omission of the stock from the inventory, Mrs. Mockler's counsel objected unless *all* the respective portions of the two paragraphs of the answer were offered in evidence. The court overruled such objection but later did permit Mrs. Mockler's counsel to place upon the record, over petitioners' objection, the entire answers contained in the two paragraphs. It is now argued that such portions of the answer received in evidence which alleged the facts upon which a claim was made of a gift inter vivos had probative value which the court ignored. What is really argued is that the allegations of the answer which purport to establish the gift inter vivos having been received into evidence, such allegations per se established the gift inter vivos. Such argument lacks any legal basis and is without merit.

A careful examination of this record, unequivocally, indicates that the testimony offered in support of the existence of a gift inter vivos of this stock, with the exception of the testimony of the witness Dohman, was clearly incompetent and that the witness Dohman's testimony as to an alleged statement of decedent was vague, equivocal and indefinite and alone could not establish the gift. The burden of proof was upon Mrs. Mockler; the proof presented was not only not clear, direct, precise and convincing but there was an almost complete absence of proof from competent witnesses. The court below properly held that decedent owned the stock at the time of his death and that the personal representative should file a supplementary inventory including such stock as assets of decedent.[13]

Decree affirmed. Appellant to pay costs.

---

[13] It may well have been considered whether the purported transfer of this stock, without the consent of the wife, was done with an intent to commit an actual fraud on the rights of the wife. See: *Montague Estate*, 403 Pa. 558, 170 A. 2d 103.