## McCarthy v. Panaccio

*Robert B. Einhorn,* for plaintiffs.

*Martin Heller,* for defendant.

BOLGER, J., October 24, 1969.—

### FINDINGS OF FACT

1. Plaintiffs are individual lawyers, members of the Philadelphia bar and members of the Unauthororized Practice of Law Committee of the Philadelphia Bar Association, charged pursuant to section 738 of the bylaws of the Philadelphia Bar Association with the duty of investigating and taking action to prevent the unauthorized practice of law for the protection of the public, to assure the public of legal advice and services rendered only by qualified persons, skilled and educated in the law, bound to maintain a high standard of professional ethics, qualified by character to act in a representative capacity and subject to the discipline and control of the courts. Plaintiffs are authorized to bring this action by the Board of Governors of the Philadelphia Bar Association.

2. Defendant is an individual who on December 10, 1962, registered the fictitious name "U.R.I.A. (Ufficio

Relazioni Italo Americane)," the purpose of the business stated in said application being "to assist all Italian Americans in immigration needs, naturalization, and all other help needed by Italian Americans here and abroad." This registration was cancelled on June 27, 1966. On June 23, 1966, defendant registered the fictitious name "U.R.I.A. International Employment Service." The stated purpose in said registration was "employment agency." On September 7, 1965, defendant obtained an employment agency license in the name of Daniel J. Panaccio, t/a U.R.I.A. International Employment Service, from the Department of Labor and Industry of the Commonwealth of Pennsylvania. As an employment agency, defendant was authorized to charge fees based on various percentages on employes' base pay, including a flat fee of 15 percent based on the yearly pay for all skilled trades, such as tailors, stonemason cutters, foreign auto mechanics, cabinetmakers and orthopedic shoemakers. Defendant also operated Blue Sky Travel Agency. Defendant is a notary public pursuant to the laws of Pennsylvania and an accountant. Defendant is not an attorney or counsellor-at-law admitted to practice or qualified to practice law in a court of record of any county of the Commonwealth of Pennsylvania.

3. A subcommittee of the Unauthorized Practice of Law Committee of the Philadelphia Bar Association first met with defendant and his counsel to discuss his activities in May of 1966.

4. In order to immigrate from Italy or other Eastern Hemisphere countries it was, and is, required that the immigrant be granted a visa, numbers for which were, and are, numerically limited, or be exempt from these numerical limits. Distribution of visas within the numerical limits is, and was, based on a system of preferences. Preferences within and ex-

emption from numerical limits are, and were, based on family relationship. Preferences were, and are, also based on professional or trade skills. Preferences are established on petition to the Immigration and Naturalization Service of the United States Department of Justice. Family status was classified based on approval of petition I-130 and the appended record thereto, and preference based on skill was accorded to beneficiaries of petition I-140 and the appended record thereto. The statutory material in this area is found in The Immigration and Nationality Act of June 27, 1952, as amended, 66 Stat. 163 and amendments thereto, principally 79 Stat. 911 through 922, 8 U.S.C.A. § 1101 ff.

The filing of multiple petitions for a beneficiary or a petitioner setting forth different grounds for a preference is permissible and is considered good practice where the possibility of the right to different preferences exists.

The petition, supporting documents and translations are the record on which the adjudication and any subsequent administrative or judicial review are based.

In order to acquire United States citizenship an alien may petition a State or Federal Naturalization Court. Prior to such filing the applicant may first file an application to file a petition (form N-400) with the Immigration and Naturalization Service. After preliminary review, applicant files the petition with the clerk of court and has a preliminary examination thereon. The transcript of the preliminary examination is the record on which adjudication and appeal, if any, is had unless petitioner requests trial de novo before the court.

Immigration and Naturalization are subjects of Federal as opposed to State law. While the United

States Constitution mentions naturalization and the United States Congress has enacted a body of statutory law on immigration and naturalization, there are also considerable bodies of law on both subjects contained in regulations of the several United States agencies and in the common law, which are the precedential, administrative, and judicial decisions interpreting and applying various statutes.

In addition to immigration and naturalization a competent counselor must also consider the law of citizenship since in appropriate cases proof of United States citizenship obviates questions of immigration and of naturalization. Such questions also involve not only statutory materials but also precedential decisions.

In the event of denial of any application review lies before administrative bodies and then to judicial authority. In an appropriate cause, review might even be before the Supreme Court of the United States. However, judicial review may be had only of the record below and only if administrative remedies are timely exhausted. Such exhaustion of remedies may involve full deportation proceedings.

5. The act or acts of an attorney or authorized representative in physically appearing in a case or in filing a brief, application, petition, paper or other document on behalf of a client is considered by the Immigration Service or the Board of Immigration Appeals to constitute practice before such agencies: 8 C.F.R. §1.1(i).

The Immigration and Naturalization Service and the Board of Immigration Appeals do not now enroll practitioners. Since applicants, petitioners, beneficiaries and others, citizen and alien, are entitled to counsel, representation is limited to attorneys-at-law, reputable individuals, appearing without remunera-

tion, representatives of recognized religious, charitable and social service agencies, officials accredited to the foreign country of the alien's allegiance, certain foreign attorneys and nonlawyers who had been authorized to practice on or before December 23, 1952: 8 C.F.R. §292.1. Defendant is not a member of any of these groups.

The submission of any application, petition or documentation by a travel agent, notary public or any individual other than the applicant, petitioner, attorney or authorized representative, does not invalidate such submission. Rather it is considered that the applicant or petitioner had submitted such application, petition or document by mail. All action taken is communicated to the applicant or petitioner directly: 8 C.F.R. §103.2(a).

6. Defendant's general manager, Joan Biunno, under instructions from defendant, prepared petitions to the Immigration and Naturalization Service of the Department of Justice of the United States of America for the obtaining of preferences in immigration. These were the forms known as I-130 and I-140. Defendant's employe, at his direction, also prepared initial applications for naturalization. Defendant's employe interviewed the beneficiaries of the preference applications who were in this country or conducted correspondence with them for the purpose of obtaining the information necessary for such petitions. She also advised the beneficiaries as to the documents needed for the petitions. In May of 1963, defendant advised the Immigration and Naturalization Service that he in the past had done much work to help and assist Italian-Americans insofar as immigration and naturalization is concerned, but only on a small scale. It reached the point where he had no alternative but to open another department devoting

full time to this work. His work covered many operations. First, petitions for people abroad to be permitted to come to this country in various classes, and also specialists and first class preference. He also assisted the Italian immigrant, who had been here for five years, in becoming a citizen. He also helped the Italians in preparing all legal, foreign documents in their native tongue. Defendant maintained his main office in Philadelphia and a branch office in New Haven. At that time he anticipated having additional offices in Pittsburgh and San Francisco. Mr. Frank D. P. Medori was his general manager.

On September 23, 1964, defendant, in a statement under oath to an investigator for the Immigration and Naturalization Service, stated that his business was an accounting service and that a branch of that was the U.R.I.A., the basic operation of which was to assist all Italian Americans in this country in any and all of their needs. It had been functioning and operating as such since September 15, 1962, and at that time had three employes, Frank Medori and two girls. He stated that "we have a branch—we have an attorney in Europe that handles our Italian work there but not first preference." If a person has property in Europe, in Italy, which he wants to dispose of, defendant takes all documentation and forwards the same to his attorney in Italy. This attorney did not perform any first preference work. He had processed approximately 50 visa petitions from September 1962 to the date of his statement. Many of these petitions involved tailors. Defendant stated he had no working arrangement with any tailoring manufacturing company with regard to these petitions. His employe was instructed that upon receipt of a new case, all affidavits and documents attested to by a known company, he was to write the company to inquire whether

the documents were true and authentic. Without such an affirmation, the employe was to return all the papers given by the sponsor. When his employe writes for supporting documents he advises people what is necessary. Defendant as a notary public of Pennsylvania notarized all documents and papers that needed to be notarized on behalf of U.R.I.A.

7. Defendant had obtained execution of forms I-130 and I-140 petitions by the petitioner-employers prior to their being filled in and had notarized the signatures. In one instance, a woman employe of defendant signed the name of a Mr. Cemmino, a lawyer in New Jersey, as the preparer of the petition. Joan Biunno had executed the I-140 petitions in block no. IV thereof as the preparer. Defendant instructed her to discontinue this practice after the bar association commenced its investigation. This same witness delivered money from defendant to the petitioner-employers as gratuities for their acting as petitioners. In addition, a camera and a trip was given to an employe of one of the petitioner-employers. When fees or moneys from the alien beneficiary were received, a receipt was given therefor, usually reciting acknowledgement of a deposit for an employment contract. Defendant, during the course of employment of Joan Biunno, from April 1965 to June 1967, processed approximately 500 I-130 and I-140 petitions, charging a minimum of $750 for this service. He usually required a deposit upon processing of the petition, additional payment upon approval by the Immigration and Naturalization Service and a final payment upon arrival. The amount of these respective payments were changed during Miss Biunno's employment, generally by increasing the initial deposit and the second payment. The filing of the petitions with the Immigration and Naturalization Service was accomplished

by mail, using the letterhead of the petitioner-employer. A check of U.R.I.A. was used initially to pay the filing fee of $10. Later, defendant used money orders to pay the filing fee.

8. Upon two occasions, defendant had an employe prepare wills for others, using a form book. He received $60 for one of these wills. He also prepared a deed for transfer of title of a home of the parents of one of his employes.

9. Defendant used the title "Avvocato," which means lawyer, and also the title "Notary Public." Under Italian law, a notary public must be a lawyer who takes a special examination to qualify for the office, and has exclusive jurisdiction to prepare certain legal documents, such as wills and deeds. In a letter to a prospective client in February 1965, in Italian, defendant's employe signed the letter as "Director General." He also used a circular stamp seal with the initials and full name of defendant's fictitious name. This letter quoted a fee of $750 with a schedule of payments and described the documents necessary to process an I-140 petition.

10. Defendant dealt with a lawyer in New York City and demanded an additional fee from him in order to renew a labor certificate. In this case, the alien beneficiary had obtained employment from a Philadelphia tailoring concern directly and not through defendant. The lawyer refused to pay the requested fee and challenged defendant's activities as being the practice of law. The petition was withdrawn. In another case, defendant handled a petition for a visa for a woman based upon her alleged skills as a tailor. The petition failed for lack of proof of such skills. Ultimately, a refund of a portion of the fee deposited was negotiated between defendant and counsel for client. Defendant did not process a petition for the

woman's husband as a cabinetmaker, one which would have been successful and would have allowed the immigration of the woman as a wife of the specialized worker. By the time such a petition had been processed, the quota from the Eastern Hemisphere was filled and immigration will be impossible for a long period of time.

## DISCUSSION

The Act of April 28, 1899, P. L. 117, sec. 1, 17 PS §1608, as amended, provides as follows:

"From and after the passage of this act, it shall not be lawful for any person, partnership, association, or corporation, in any county in the State of Pennsylvania, to practice law, or to hold himself, herself, or itself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney-at-law, attorney and counsellor-at-law, counsellor, or the equivalent in any language, in such manner as to convey the impression that he, she, or it is a practitioner of the law of this or any other State, Nation, Country or Land, or, in any manner, to advertise that he, she, or it, either alone or together with another person or persons, has, owns, conducts or maintains a law office, or law and collection office of any kind, for the practice of the law of this or any other State, Nation, Country or Land, without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth in accordance with the regularly established rules governing such admissions: Provided, however, that nothing herein contained shall be construed as prohibiting corporations of the first class, acting in good faith and in pursuance of the purposes of their charters, from rendering through attorneys-at-law, legal service to the members of such corporations."

Section 2 of that act makes violation thereof a misdemeanor and provides penalties. The Act of July 12, 1935, P. L. 708, sec. 1, 17 PS §1610, provides that anyone who shall practice law within the Commonwealth without being a member of the bar of a court of record shall be guilty of a misdemeanor and provides penalties therefor. The Act of June 9, 1939, P. L. 329, sec. 1, 17 PS §1611, provides that anyone soliciting a retainer, power of attorney or any agreement, written or oral authorizing an attorney to perform or render legal services, shall be guilty of a misdemeanor and penalties are provided.

Members of the Unauthorized Practice of the Law Committee of the Philadelphia Bar Association are proper parties to bring an action to enjoin the unauthorized practice of law. The court has the right to enjoin the unauthorized practice of law: Ginsburg v. Kovrak, 392 Pa. 143 (1958). The habitual drafting of legal instruments for hire constitutes a practice of law, even though the individual so engaged makes no attempt to appear in court or to give the impression he is entitled to do so: Childs v. Smeltzer, 315 Pa. 9 (1934). While the drafting and execution of legal instruments is a necessary concomitant of many businesses and cannot be considered unlawful, such practices will be prohibited when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them, and when the person so drafting them is not a member of the bar and holds himself out as specially qualified and competent to do that type of work: Childs v. Smeltzer, supra.

The primary purpose of the practice of law statute is to protect the public from the injurious consequences of entrusting its legal affairs to untrained persons. A layman cannot imply by advertising that he can

perform legal services, even if none are actually performed: Burch v. Mellor, 43 D. & C. 597 (1942). The mere filling out of an application to the Pennsylvania Liquor Control Board will not be the practice of law and will only be considered a clerical action, but should such work be accompanied with an interpretation of the law on an application of law to the particular facts of a particular applicant, it will be the unauthorized practice of law: Walker v. Kahn, 31 D. & C. 620 (1938).

A title insurance company which did not hold itself out to the public as authorized to do any business except title insurance business, but which, incidental to issuance of title insurance, prepared deeds, mortgages, assignments of mortgages and agreements and informed applicants of conditions upon which title insurance would be issued, was not engaged in the unauthorized practice of law: LaBrum v. Commonwealth Title Company of Philadelphia, 358 Pa. 239 (1948). Agreements providing that laymen are to receive from lawyers a portion of their fees for assisting in the prosecution of a cause of action are void because contrary to public policy in part as set forth in the Act of April 28, 1899: Waychoff v. Waychoff, 309 Pa. 300 (1932).

A State may not enjoin a nonlawyer from preparing matters involved in practice before the United States Patent Office, or other United States agencies, if the individual is admitted to practice before said agency under its rules of practice: Sperry v. Florida, 373 U. S. 379 (1963).

Where a defendant failed to testify, the trier of fact could reasonably infer that if defendant had testified, his evidence would be unfavorable to himself: Gaffney v. Collins, 204 Pa. Superior Ct. 212 (1964).

A status once established is presumed to continue until the contrary is shown: Donsavage Estate, 420 Pa. 587 (1966).

The uncontroverted evidence in this matter establishes that defendant has violated the Act of April 28, 1899, supra, in two respects. He has engaged in conduct which constitutes the practice of law, and he has held himself out to the public as being entitled to practice law and used the title of lawyer or its equivalent.

Defendant's failure to refute or rebut plaintiffs' evidence as to the nature of his activities in this civil action should serve as confirmation of the testimony produced. Defendant's failure to testify should be considered along with plaintiffs' evidence, as the court did in the Gaffney v. Collins case, supra.

Plaintiffs' evidence was directed both to specific cases handled by defendant and a continuing course of conduct over a period of years. The volume of his case load and the amount of fees charged are clear indications that his activities were not casual, occasional or a minor sideline to other activities. Defendant's silence at the trial of this matter also is a strong indication that his practice and status have not changed, or, at the least, he does not intend to voluntarily change or stop his activities in the future: Donsavage Estate, 420 Pa. 587, 218 A. 2d 112 (1966).

Admittedly, defendant is not a lawyer authorized to practice in any jurisdiction and, clearly, is not eligible to practice before the Immigration and Naturalization Service under their rules of practice: Sperry v. Florida, supra. On the contrary, defendant took steps to conceal from the Federal agency his activities in preparing preference petitions by the use of a lawyer's signature on the form itself, the use of petitioner's letterhead and money orders in transmitting the petitions for filing. This conduct implies

knowledge on the part of defendant that he was engaging in activities not permitted by either the law or the agency.

The evidence makes abundantly clear that in the preparation of the preference petitions and the activities associated therewith (interviewing the alien or his relatives, advising as to documents necessary and the requirements for obtaining the preference, preparing and checking the validity of documents, selection of the appropriate grounds for, and form of, petition for preference), defendant was engaging in the practice of law. This activity was not the mere filling in of a blank, factual questionnaire. Knowledge of statutes, cases and agency regulations are required in order to select the appropriate form, and to evaluate both the nature and the quantum of proof required in each type of case. The legal rights and privileges involved are some of the most basic to the individual; the right to travel, the right to obtain or retain residence in this country, the right to citizenship and liability to criminal prosecution.

The evidence establishes that the contents of the initial petition for preference constitute the record in the proceeding to obtain a visa and that, in subsequent proceedings on several appellate levels, the alien can be bound by his initial statements in the petition. Failure to select proper grounds for preference, or evaluate the proofs available can result in the denial of permanent entry into the country, when otherwise available when the quota was open, as was demonstrated in the tragic case of the tailor-wife and cabinetmaker-husband. Despite the fact that the employer is the petitioner, it is clear that defendant's clients are the aliens who pay him substantial sums of money, in part as a contingent fee, while he is rewarding representatives of the petitioner for their cooperation with him.

The preparation of wills and deeds by defendant is obviously the practice of law. See Childs v. Smeltzer, supra. The evidence indicates there is a connection between these activities and the visa and citizenship practice. The purpose of defendant's business stated in his initial fictitious name registration was to assist all Italian-Americans in immigration needs, naturalization, and all other help needed in some periods. His letter to witness Perlovsky stated that he helped Italians in preparing all legal, foreign documents in their native tongue. Defendant did not limit his practice to his "specialty," but assumed the aspects of a general practitioner.

Defendant apparently seeks to justify his conduct as being part of the activities of an employment agency. The evidence provides no basis for such contention. His initial fictitious name registration did not state this purpose. It was amended to refer to an employment agency only after initial contact and investigation by the Philadelphia Bar Association. His visa petition activities antedate by many years his employment agency license. He did not charge the fees set forth in his license. His letter as to his fees makes no reference to his being an employment agency and the fee is partially contingent, not upon obtaining employment, but upon issuance of the visa and arrival in the country. The testimony of witness Wildes reveals that he handled an immigration matter where the alien had obtained employment directly and not through him. Defendant has used the employment agency as a cover-up, adopted only after the bar association brought pressure upon him to cease his activities.

Furthermore, the services and advice rendered as to marshalling documents and preparation of the petition are not an integral part of the function of an employment agency, and certainly not analogous to

the conditions upon which title insurance would be issued as in the LaBrum case, supra. An employment agency license can only be a license to permit the activities of bringing together prospective employers and employes and not a license for all kinds of activities that could alter or affect important personal rights before governmental bodies.

The record contains abundant proof that defendant, besides actually engaging in activities constituting the practice of law, has held himself out to the public to be a lawyer. The portion of the public involved are aliens in Italy or individuals in this country of Italian extraction and culture. He has been heard to call himself "avvocato" or "lawyer." His use of the title "Notary Public" to his type of clients would mean that he was a lawyer more qualified and trustworthy than most. His letter to a prospective client bears an official looking seal near the signature, even though defendant was not a corporation. The use in his fictitious name of "Uffico" implies official or professional standing, and the use of the acronym, U.R.I.A., has the same implication. The title given to Medori in the solicitation letter would appear to have the same purpose. Defendant was obviously seeking to impress upon his Italian, or Italian-American, clientele the fact that he was a lawyer. The volume of his practice indicates his success.

## CONCLUSIONS OF LAW

1. Plaintiffs have standing to bring this action.

2. The court has jurisdiction of the subject matter and the parties involved in this action.

3. Practice and procedure before the Immigration and Naturalization Service of the Department of Justice of the United States of America affects the rights of individuals to remain in, or come into, this country, to remain, or become, citizens of this country, and subjects individuals to possible Federal criminal pro-

ceedings, all of which are substantial personal legal rights, privileges or liabilities.

4. The contents of initial petitions and applications, and the documents attached thereto, are decisive in proceedings subsequent to their filing with the Immigration and Naturalization Service, in that they constitute the basic record to which the appropriate law is applied in reaching a decision.

5. Advice as to the rights and remedies in the areas of immigration, naturalization and citizenship, the preparation of petitions and applications to the Immigration and Naturalization Service, the accumulation of documents and other supporting data in reference thereto, and rendering advice thereon, constitutes the practice of law.

6. Defendant engaged in the practice of law in preparing petitions and applications to the Immigration and Naturalization Service, supporting documents and rendering advice on immigration, naturalization and citizenship matters.

7. Defendant engaged in the practice of law in preparing wills and deeds.

8. Defendant held himself out to various segments of the public both in this country and Italy to be a lawyer.

9. Defendant is not authorized to practice law in this State or in any other American or foreign jurisdiction.

10. Defendant is not admitted to practice or represent others before the Immigration and Naturalization Service.

11. Upon consideration of all the evidence and the law, plaintiffs are entitled to a decree enjoining defendant from continuing in the activities complained of which constitute the practice of law.

For the foregoing reasons, I enter the following

## DECREE NISI

And now, October 24, 1969, it is ordered, adjudged and decreed that defendant, Daniel J. Panaccio, his agents, employes, representatives and all others acting by or under his direction or authority and all persons in active concert or participation with him, be perpetually and permanently enjoined and restrained from in any manner or by any device, directly or indirectly, engaging in the practice of law, in the preparation of petitions and applications to the Immigration and Naturalization Service of the Department of Justice of the United States of America, in the preparation or accumulation of documents, except only verbatim translations, and other data in reference to petitions and applications to be filed with the Immigration and Naturalization Service of the United States of America, in rendering advice in reference to said petitions, applications and supporting documents and data, in holding himself out to the general public in Philadelphia, Pa., or elsewhere, as an attorney or one authorized to practice law, by the use of the names of "Notary Public," "Avvocato," or some similar device, in the preparation of wills and deeds for others, and in giving legal advice and assistance, and in maintaining an office for the purposes of continuing the activities prohibited herein. Defendant shall not be prohibited from obtaining renewals of labor certificates from State or Federal Departments of Labor.

If no exceptions are filed to this decree nisi within 20 days from the date hereof, it shall be entered as the final decree of the court.